# United States Court of Appeals
## For the First Circuit

No. 12-1897

UNITED STATES OF AMERICA,

Appellee,

v.

EFRAIN SANTIAGO-BURGOS, a/k/a Miyagui,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Howard, Circuit Judge,
Souter[*], Associate Justice,
and Stahl, Circuit Judge.

Heather Golias, with whom Law Office of Heather Golias was on brief, for appellant.
Michael C. Bagge, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Veléz, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, were on brief, for appellee.

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

April 21, 2014

**HOWARD, Circuit Judge**. Efrain Santiago-Burgos appeals the ninety-seven month prison sentence imposed by the district court after he pled guilty to a drug conspiracy charge. Santiago argues that the district court made a prejudicial Sentencing Guideline calculation error and improperly imposed his sentence consecutive to one he received as a result of a conviction tangentially related to the relevant drug conspiracy. The government concedes the Guideline miscalculation point but disputes the consecutive sentence error. It also argues that any error is nevertheless for naught because Santiago's plea agreement included a waiver of appeal. Santiago disputes the applicability of the waiver. We hold as follows: the waiver does not bar Santiago's appeal; the consecutive sentence was not improper; the Guideline error requires remand for resentencing.

## I.

In August 2008, Santiago and dozens of other people were indicted on multiple drug conspiracy counts. The indictment alleged, inter alia, that Santiago served as a "runner," whose duties included providing drugs to sellers and collecting drug proceeds from them. Previously, in July 2006 -- a time during which the drug conspiracy was alleged to be active -- Santiago was sentenced to a short prison term and three years of supervised release for assaulting a Drug Enforcement Agency informant. The

-3-

supervised release eventually was revoked as a result of the current charges.

In April 2011, Santiago pled guilty to one count of the present indictment, which charged him with conspiracy to possess with intent to distribute more than five kilograms of cocaine, fifty grams of cocaine base, one kilogram of heroin, 100 kilograms of marijuana, and/or Oxycodone and Xanax, all within 1000 feet of a school or public housing complex.[1]  The government and Santiago executed a plea agreement which stipulated that Santiago would be accountable for at least two but less than 3.5 kilograms of cocaine.  The parties further agreed that Santiago's Sentencing Guideline calculation would begin with a Base Offense Level ("BOL") of twenty-eight,[2] to be increased by two levels because of the protected location involved[3] and by two more levels for his role in the offense.[4]  Finally, if Santiago accepted responsibility for his crimes, he would receive a three-level deduction.[5]  These stipulations yielded an agreed-upon Total Offense Level ("TOL") of 29, a result which is not part of this appeal.

---

[1] 21 U.S.C. §§ 841(a)(1), 846 and 860.

[2] U.S.S.G. § 2D1.1(c)(6).

[3] Id. § 2D1.2(a)(1).

[4] Id. § 3B1.1(c).

[5] Id. § 3E1.1.

-4-

The plea agreement contained no stipulation with respect to Santiago's Criminal History Category ("CHC"), but the parties agreed to certain limits on the parties' permissible arguments about the appropriate sentence. They agreed that, if Santiago's CHC was determined to be I, he could ask for a sentence as low as eighty-seven months or the low end of the applicable Guideline range, whichever was higher. The government, meanwhile was permitted to recommend a sentence of ninety-seven months if Santiago's CHC was I or II. A CHC of III or higher would result in a recommendation at the low end of the applicable Guideline range.[6] Neither side was permitted to recommend a sentence shorter than eighty-seven months.

Especially relevant to this appeal, the plea agreement contained the following waiver provision: "The defendant hereby agrees that if this Honorable Court accepts this Plea Agreement and sentences him according to its terms, conditions and recommendations, defendant waives and surrenders his right to appeal the judgement [sic] and sentence in this case."

## II.

After Santiago's plea and before sentencing, a Presentence Investigation Report ("PSR") was provided to the district court. Santiago's CHC is the fulcrum of the parties'

_____

[6]A CHC of I and TOL 29 yields a sentence range of 87-108 months; the same TOL with a CHC of II yields a 97-121 month range; a CHC of III produces a 108-135 month range.

dispute. The PSR first saddled Santiago with two criminal history points for his 2006 informant assault conviction. See U.S.S.G. § 4A1.1(b). Two additional points were added because the instant offense was committed, in part, while Santiago was under a term of supervised release for the informant assault conviction. Id. § 4A1.1(d). The four criminal history points yielded a CHC of III.

The district court sustained Santiago's objection to the two criminal history points for the prior conviction, id. § 4A1.1(b), on the basis that the assault on the informant was an overt act within the conspiracy. See Id. § 4A1.2 cmt. n.1 (excluding from consideration of criminal history sentences that are for conduct that is part of the instant offense). Siding with the government, the district court denied Santiago's objection to the two additional points related to his commission of the instant offense while on supervised release. See Id. § 4A1.1(d). Halving the total of points from four to two dropped Santiago into CHC II, resulting in a sentencing range of 97-121 months. The district court imposed a sentence at the bottom end of that range and ordered it to run consecutively to the thirteen-month sentence he received on the informant assault case after his supervised release was revoked.

## III.

On appeal, Santiago challenges the two criminal history points assessed under U.S.S.G. § 4A1.1(d) and the district court's

imposition of a consecutive, rather than a concurrent, sentence. For its part, the government concedes the criminal history error, observing that the same rationale that the district court employed to deduct two criminal history points under section 4A1.1(b) -- that the assault was an overt act within the conspiracy to which Santiago was pleading guilty -- should apply to the two points assessed under section 4A1.1(d). We accept this concession and say no more about the issue. The government additionally maintains that there was no error in the consecutive sentence. But the government further argues that, regardless of any error below, the appellate waiver provision of the plea agreement altogether precludes Santiago's appeal. We turn first to the waiver.

The government argues that even though the court erred in its Guideline calculation by sentencing Santiago according to CHC II (two points) rather than CHC I (zero points), the sentence nevertheless met the waiver's requirement that it fall within "[the Agreement's] terms, conditions and recommendations" because the agreement allowed a ninety-seven month sentence for either CHC I or CHC II. We disagree.

A waiver of appeal is valid if it was knowingly and voluntarily executed, and if enforcement would not result in a miscarriage of justice if enforced. Sotirion v. United States, 617 F.3d 27, 33 (1st Cir. 2010); United States v. Teeter, 257 F.3d 14, 24-25 (1st Cir. 2001). But "[e]ven a knowing and voluntary appeal

waiver only precludes appeals that fall within its scope." United States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007); see also United States v. Okoye, 731 F.3d 46, 49 (1st Cir. 2013), cert. denied, 134 S. Ct. 1329 (2014); United States v. Acosta-Roman, 549 F.3d 1, 3 (1st Cir. 2008).

Here, Santiago does not claim that the waiver was not knowing and voluntary. But we still must determine whether this appeal falls within the waiver's scope. To do so, we rely on basic contract interpretation principles, construing the agreement where possible to give effect to every term and phrase, Okoye, 731 F.3d at 49, and construing any ambiguities in favor of allowing the appeal to proceed, id. (citing United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010)).

The government argues that Santiago's ninety-seven month sentence was expressly contemplated by the plea agreement, and thus his claim falls well within the waiver. We see it differently, however. While the agreement certainly did not entitle Santiago to any particular sentence, and a ninety-seven month sentence was possible under either CHC I (where it would be in the middle of the sentencing range) or II (where it would be at the low end of the sentencing range), the district court's CHC error deprived Santiago of an express right that he otherwise did possess under the Agreement -- to argue for an eighty-seven month sentence. Because the agreement limited Santiago's request to the greater of eighty-

seven months or the lower end of the applicable guideline range, once the district court erroneously settled on CHC II (with a low-end sentence of ninety-seven months), Santiago was deprived of one of the benefits of the plea bargain -- the possibility of a sentence at the low end of the correct guideline range. See United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000) (observing that a defendant who fulfills his part of a plea agreement is "entitled to the benefit of his bargain").

Here, Santiago's sentence recommendation was highly dependent on the CHC. Specifically, he could argue for an eighty-seven month sentence "if [his] Criminal History Category is I." In fact, his CHC was I (or at least should have been), and he was not permitted to so argue. We therefore find that he was not "sentence[d] . . . according to [the agreement's] terms, conditions, and recommendations" and the waiver is therefore inapplicable to this appeal. Cf. McCoy, 508 F.3d at 77-78 (finding waiver inapplicable where district court misapplied Guideline and waiver applied to sentence "within the Guideline range"). With the error conceded, we need not resolve the merits of Santiago's CHC argument and hold that Santiago must be re-sentenced applying CHC I.[7]

---

[7]While we have previously upheld the validity of identical waivers, we have also suggested that, given the frequency of appeals involving waivers, "it would be better practice" if waiver provisions made specific reference "to any terms and conditions of the plea agreement that are not intended" by the parties to be

We need less discussion to resolve the waiver issue with respect to the consecutive sentence. The plea agreement made no reference whatsoever as to whether the sentence should run consecutively to the previous one. We have previously found that a similar waiver did not bar an appeal of a consecutive sentence, and we so hold here. See United States v. Maldonado-Escarfullery, 689 F.3d 94, 97 n.2 (1st Cir. 2012).

When we turn to the substance of the argument, however, we find that Santiago's victory is a pyrrhic one. In some cases federal sentences imposed on a defendant subject to an undischarged prior sentence must be consecutive, see U.S.S.G. § 5G1.3(a); in other cases, the sentence must be concurrent, with credit for time served, see id. § 5G1.3(b); and in still other cases, the matter is left to the discretion of the sentencing judge, see id. § 5G1.3(c). United States v. Dunbar, 660 F.3d 54, 56 (1st Cir. 2011) (per curiam). Here, the parties agree that subsection (a), which applies to defendants serving an undischarged term of imprisonment, is inapposite here. So we turn our attention to subsections (b) and (c). Santiago first argues that the district court erred by not applying U.S.S.G. § 5G1.3(b), which would have mandated that his sentences run concurrently. He concedes that he did not raise this issue before the district court and that, therefore, we review

within the waiver's scope. United States v. Ortiz-García, 665 F.3d 279, 284 (1st Cir. 2011) (citing United States v. Acosta-Roman, 549 F.3d 1, 4 n.3 (1st Cir. 2008)).

-10-

it only for plain error.  Success on appeal requires Santiago to demonstrate:  1) an error; 2) that was plain or obvious and; and which 3) affected his substantial rights; and also 4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings.  United States v. Díaz-Maldonado, 727 F.3d 130, 142 (1st Cir. 2013).

To receive a concurrent sentence under Section 5G1.3(b), Santiago must demonstrate both that his prior sentence is based on conduct that is "relevant conduct" under U.S.S.G. §§ 1B1.3(a)(1), (2) or (3), and that such relevant conduct was the basis for an increase in the offense level in this case.  United States v. Carrasco-De-Jesús, 589 F.3d 22, 27 (1st Cir. 2009).  Here the dispute centers on the second element, whether the assault on the DEA informant was part of the two-level, role-in-the-offense increase for being an "organizer, leader, manager, or supervisor" in the conspiracy of conviction.  U.S.S.G.  § 3B1.1(c).

Santiago begins by correctly noting that his offense-level adjustment was due to his role as a "runner" responsible for supervising street-level dealers.  His argument jumps the tracks, however, when he tries to link his runner role to violence of the type that led to his informant assault conviction.  None of a runner's responsibilities described in the record include violence. Santiago tries to elide this gap by noting that the record reflects that "some co-conspirators would use violence" to achieve their

goals.  However, Santiago does not direct us to any record evidence to show that he was part of the group of violence-using co-conspirators.  Accordingly, we cannot find any error, much less plain error, in not applying section 5G1.3(b)

Santiago argues in the alternative that, even if U.S.S.G. § 5G1.3(c) properly applied, the district court erred in not exercising its discretion to run the sentences concurrently. However, his reliance on U.S.S.G. § 5G1.3(c) fares no better.[8]  In cases that do not fit within either subsection (a) or (b), subsection (c) allows the sentencing judge to impose sentences consecutively, concurrently, or partially concurrently to achieve a reasonable punishment for the instant offense.  Drilling a bit deeper, Application Note 3(C) states that "[s]ubsection (c) applies in cases in which the defendant was on federal or state . . . supervised release at the time of the instant offense and has had such  . . . supervised release revoked."  U.S.S.G. § 5G1.3, cmt. n.3(C).  The crowning blow to Santiago's argument follows, though: "[T]he Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the

---

[8]Despite Santiago's entreaties to the contrary, this argument was not raised below.  While his brief points us to several spots in the record where he asserted that the conduct underlying his revocation was "relevant," in the sentencing vernacular, to the instant conviction, those references were all made in connection with his objection to the CHC calculation, not the consecutive sentence issue.  A single remark at sentencing that all the conduct is "part of the same . . . conspiracy, and therefore that the sentence should be concurrent" does not change our view.

revocation." Id. In harmony with this note, we have held in a similar circumstance that consecutive sentences are "the default position." United States v. Parks, 698 F.3d 1, 8 (1st Cir. 2012) (affirming consecutive sentence imposed on defendant who was on probation at time of conviction, even though both the conviction and probation violation arose from the same course of conduct), cert. denied, 133 S. Ct. 2021 (2013). Against this backdrop, there was no error in the district court's decision to impose the sentence in this case consecutively to the revocation sentence.

## IV.

Santiago's ninety-seven month sentence is **vacated** and this case is **remanded** to the district court for **resentencing** in accordance with this opinion. The district court's decision to impose the sentence in this case consecutively to Santiago's earlier sentence is **affirmed**.