# United States Court of Appeals
## For the First Circuit

No. 19-1081

UNITED STATES OF AMERICA,

Appellee,

v.

HÉCTOR JAVIER O'FARRILL-LÓPEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and Katzmann,* Judge.

Eric A. Vos, Federal Public Defender, Vivianne Marrero-Torres, Assistant Federal Public Defender, and Franco L. Pérez-Redondo, Research & Writing Specialist, on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Antonio L. Pérez-Alonso, Assistant United States Attorney, on brief for appellee.

---

* Of the United States Court of International Trade, sitting by designation.

March 12, 2021

**SELYA**, **Circuit Judge**.  A federal grand jury sitting in the District of Puerto Rico returned an indictment charging defendant-appellant Héctor Javier O'farrill-López (O'farrill) with production of child pornography.[1]  See 18 U.S.C. § 2251(a), (e). The charged offense was alleged to have taken place from in or about 2016 through early July of 2017, and it is undisputed that O'farrill was then serving a twelve-year term of probation imposed by a local court for an unrelated crime.

O'farrill pleaded not guilty to the federal indictment, and plea negotiations ensued.  Those negotiations proved fruitful, and the parties entered into a plea agreement (the Agreement). Under the terms of the Agreement, the government agreed to dismiss the indictment and instead file a one-count information (the Information) charging O'farrill with the lesser offense of possession of child pornography.  See 18 U.S.C. § 2252A(a)(5)(B). O'farrill, in turn, agreed to plead guilty to the Information.

The Agreement — which was binding upon the parties and, if accepted, upon the district court, see Fed. R. Crim. P. 11(c)(1)(C) — contained a provision denominated "Specific Sentence Recommendation."  In relevant part, this provision stipulated that, "in exchange for the defendant pleading guilty to COUNT ONE

_____

[1] The record contains differing spellings of O'farrill's name. We treat as authoritative the spelling used both in the plea agreement and in O'farrill's signature on that agreement.  For consistency, we employ that nomenclature throughout.

of the Information, the parties agree to recommend a sentence of seventy-eight (78) months of imprisonment and at least five years of supervised release." The Agreement also contained a waiver-of-appeal provision, stipulating that the "[d]efendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is seventy-eight (78) months, the defendant waives the right to appeal any aspect of this case's judgment and sentence, including but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release."

In due course, the district court accepted the Agreement. The government then filed the Information, and — after a thorough plea colloquy — O'farrill pleaded guilty to it. This colloquy included a discussion of the effect of the waiver-of-appeal provision, as called for by Federal Rule of Criminal Procedure 11(b)(1)(N). The court continued the matter for sentencing and, on December 14, 2018, sentenced O'farrill to a seventy-eight-month term of immurement,[2] to be followed by five years of supervised release. The court denied O'farrill's request that the incarcerative portion of the sentence be ordered to run concurrently with any period of incarceration that might

---

[2] The seventy-eight-month sentence was not only the incarcerative sentence specified in the Agreement but also fell at the bottom of the applicable guideline sentencing range.

- 4 -

thereafter be imposed by the Puerto Rico courts in consequence of his violation of probation. Once sentence was imposed, the court — on motion of the government — dismissed the original indictment.

This timely appeal followed. In it, O'farrill attempts to challenge the district court's failure to run his sentence concurrently with any sentence that might be imposed by the Puerto Rico courts for the probation violation.

Our inquiry begins — and ends — with the waiver-of-appeal provision. Two decades ago, we ruled "that plea-agreement waivers of the right to appeal from imposed sentences are presumptively valid (if knowing and voluntary)." United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001). Although O'farrill effectively concedes that the waiver of appeal in this case was knowing and voluntary, the proposition stated in Teeter has some other limitations. See id. at 24-26. To begin, Teeter only applies when a claim of error falls within the scope of the waiver. See id. at 24. Another limitation is that such a waiver is "subject to a general exception under which the court of appeals retains inherent power to relieve the defendant of the waiver, albeit on terms that are just to the government, where a miscarriage of justice" would otherwise occur. Id. at 25-26. As we explain below, O'farrill's claim of error is within the scope of the waiver and enforcing the waiver does not result in a miscarriage of justice.

- 5 -

In the case at hand, O'farrill argues that Teeter does not apply because his claim of error falls outside the scope of the Agreement's waiver-of-appeal provision. He also argues that even if Teeter applies, the appeal waiver should not be enforced because enforcement would come within Teeter's miscarriage-of-justice exception. It is to these arguments that we now turn.

We set the stage. Courts interpret plea agreements according to traditional contract-law principles. See Garza v. Idaho, 139 S. Ct. 738, 744 (2019); United States v. Almonte-Nuñez, 771 F.3d 84, 88 (1st Cir. 2014). A fundamental tenet of contract law instructs that the unambiguous words of a contract should ordinarily be given their plain meaning. See Smart v. Gillette Co. Long-Term Disab. Plan, 70 F.3d 173, 178 (1st Cir. 1995). Thus, when the relevant text of a plea agreement is unambiguous, "[p]lea agreements should be given their plain meaning." United States v. Ocasio-Cancel, 727 F.3d 85, 89 (1st Cir. 2013); accord United States v. Murphy-Cordero, 715 F.3d 398, 400 (1st Cir. 2013). Put another way, courts should not impose conditions on plea agreements that go beyond those to which the parties have agreed. See United States v. Benchimol, 471 U.S. 453, 455 (1985) (per curiam).

In the Agreement, O'farrill waived his right "to appeal any aspect of [his] judgment and sentence" so long as "the imprisonment sentence imposed by the Court is seventy-eight (78) months." That was exactly the sentence that the district court

imposed and, thus, the sole condition for the operation of the waiver was fulfilled. No more was exigible to give force to the waiver. See United States v. Santiago, 947 F.3d 1, 2 (1st Cir. 2020), cert. denied, 140 S. Ct. 2818 (2020).

O'farrill's counter-argument posits that the sole condition of the waiver-of-appeal provision was not fulfilled because the district court refused his request to order that the sentence run concurrently with any sentence thereafter imposed by the Puerto Rico courts for the probation violation. But a straightforward reading of the appeal waiver demolishes O'farrill's first argument and shows with conspicuous clarity that his putative claim of error falls within the scope of the waiver. A determination that a sentence should run concurrently with some other sentence is surely "an[] aspect" of a sentence. See id. And as such, O'farrill's claim is foreclosed by the unvarnished terms of the waiver-of-appeal provision itself.

To be sure, O'farrill tries to validate his counter-argument by embracing two of our prior decisions. See United States v. Santiago-Burgos, 750 F.3d 19, 22-25 (1st Cir. 2014); United States v. Maldonado-Escarfullery, 689 F.3d 94, 97 n.2 (1st Cir. 2012). Those decisions, however, are easily distinguishable: in each instance, the nature of the waiver-triggering event and the language of the waiver-of-appeal provision differed materially from the language of those elements in the Agreement.

To illustrate, in Santiago-Burgos, the plea agreement did not focus simply on the length of the sentence but, rather, specified that the triggering event for the waiver was the court sentencing the defendant "according to [the plea agreement's] terms, conditions and recommendations." 750 F.3d at 22. Because the court ran the defendant's sentence consecutively to another sentence, see id., and because the plea agreement's terms, conditions, and recommendations did not mention the possibility of a consecutive sentence, see id. at 23, the waiver was never triggered. The same distinctions apply to the other case upon which O'farrill relies. See Maldonado-Escarfullery, 689 F.3d at 97 n.2 (refusing to enforce appeal waiver based on essentially same plea-agreement language as in Santiago-Burgos).

The more pertinent precedent is our decision in Santiago. There, we enforced an appeal waiver, worded similarly to the appeal waiver in this case, in circumstances in which the district court imposed a sentence within the recommended range but ordered it to run consecutively to another sentence. See Santiago, 947 F.3d at 1-2. Although neither the sentence-recommendation provision nor the waiver-of-appeal provision said anything about concurrency or consecutiveness, we enforced the waiver because the sentence imposed coincided with the triggering event described in the plain language of the sentence-recommendation provision — and nothing more was required for the waiver to take effect. See id.

at 2-3. Language tying the waiver's triggering event to the "terms, conditions, and recommendations" limned in the plea agreement was absent.

The case at hand fits seamlessly within the <u>Santiago</u> mold. Here, the triggering event for the waiver was the imposition of a seventy-eight-month sentence — precisely the sentence that the district court imposed. And as in <u>Santiago</u>, language tying the waiver's triggering event to the Agreement's "terms, conditions, and recommendations" was absent.

O'farrill has another shot in his sling. He contends that we should decline to enforce the waiver-of-appeal provision because enforcement would result in a miscarriage of justice. The premise on which this contention rests is unimpugnable: we long have recognized a miscarriage-of-justice exception to the enforcement of appeal waivers. <u>See</u> <u>Teeter</u>, 257 F.3d at 25-26. Even so, the conclusion that O'farrill draws does not follow. Enforcement of the appeal waiver in this case will not give rise to a miscarriage of justice. We explain briefly.

When a party seeking to avoid an appeal waiver attempts to invoke the miscarriage-of-justice exception, we inquire into factors such as the clarity of the waiver, the gravity and character of the precluded claim, the potential impact of the claim on the defendant's situation, the government's interest in enforcing the waiver according to its terms, and the extent to

- 9 -

which the defendant can be said to have acquiesced in the result. See id. at 26. Typically, "an otherwise lawful, within-guidelines sentence . . . does not surmount the miscarriage-of-justice hurdle." United States v. Cabrera-Rivera, 893 F.3d 14, 24 (1st Cir. 2018). So, too, we have held that a sentencing court's alleged misunderstanding of the preferred approach to determining whether a sentence should be imposed consecutively or concurrently with another sentence, without more, is a "garden-variety claim" of error and does not "even closely approach[]" a miscarriage of justice. United States v. Calderón-Pacheco, 564 F.3d 55, 59 (1st Cir. 2009).

We discern no miscarriage of justice here. The waiver-of-appeal provision, read in conjunction with the sentence-recommendation provision, is luminously clear: so long as O'farrill received a seventy-eight-month incarcerative sentence — and he did — he relinquished any right to appeal "any aspect of [his] judgment and sentence." In addition, the question that O'farrill seeks to raise was entirely foreseeable: the relationship between the sentence to be imposed in this case and the sentence that might be imposed for the probation violation was front and center in the district court. Both in his sentencing memorandum and at the disposition hearing, O'farrill's counsel requested the district court to run the federal sentence concurrently with the anticipated probation-violation sentence.

Had the issue of concurrency been sufficiently important to O'farrill, he could either have negotiated concurrency as part of the Agreement or conditioned his appeal waiver on it. Having done neither, the character of the precluded claim undermines his miscarriage-of-justice argument. Cf. United States v. Caramadre, 807 F.3d 359, 379 (1st Cir. 2015) (explaining that "a defendant's dissatisfaction with his sentence, no matter how profound, cannot constitute a basis for circumventing a waiver-of-appeal provision to which he agreed").

We have warned that the miscarriage-of-justice exception should be "applied sparingly and without undue generosity." Teeter, 257 F.3d at 26. This case — in which O'farrill bargained for and received a bottom-of-the-range sentence after pleading to a substantially reduced charge — simply does not come within those narrow confines. And this is especially true because the impact of the challenged action on O'farrill is wholly conjectural: for aught that appears, he has not yet received any sentence for the probation violation. If and when one is handed down, the sentencing court may very well elect to run it concurrently with O'farrill's federal sentence.

O'farrill makes a related argument. He says that the district court misapprehended its authority to impose a sentence that would run concurrently with a sentence that had yet to be imposed — a failing which, if it existed, might ground his

- 11 -

miscarriage-of-justice argument. But we need not probe that point too deeply because, whatever its relevance, this argument does not withstand scrutiny.

O'farrill hinges this argument on the district court's statement, when asked during sentencing by defense counsel to run the federal sentence concurrently with any future sentence imposed by the Puerto Rico courts for the probation violation, "[t]hat, I cannot do." But the district court later clarified what it meant. When defense counsel expressed concern that because the federal sentence was silent on the subject, it would be deemed by the Puerto Rico courts as intended to run consecutively, the district court replied: "[y]es, you have concerns, but you don't give the factual data for the Court to make a determination. So I haven't said concurrent because there is nothing before the Court that the Court could consider making its sentence concurrent to." We read this exchange as implying that because the district court had not been given sufficient information about the proceedings in the Puerto Rico courts, it reasonably chose to leave the consecutiveness/concurrency determination to those courts. O'farrill's misapprehension-of-law argument therefore fails. See United States v. Hahn, 359 F.3d 1315, 1329 (10th Cir. 2004) (en banc) (per curiam) (holding that district court's alleged misapprehension of law regarding lack of discretion to impose

concurrent sentence did not trigger miscarriage-of-justice exception).

We need go no further.  Scripture teaches:  seek and you shall receive.  <u>Matthew</u> 7:7.  Having not sought to condition his appeal waiver on his receipt of a concurrent sentence, O'farrill can fairly be said to have acquiesced in the sentencing court's refusal to order the sentence to run concurrently with the anticipated probation-violation sentence.  Put differently, he appears to have gotten precisely what he bargained for.

**<u>Dismissed</u>**.