# United States Court of Appeals
## For the First Circuit

No. 21-1842

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID STAVELEY, a/k/a Kurt D. Sanborn, a/k/a David Sanborn,
a/k/a Kurt Sanborn, a/k/a David Adler Staveley,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Thompson, Selya, and Gelpí,
Circuit Judges.

Kara Hoopis Manosh for appellant.
Lauren S. Zurier, Assistant United States Attorney, with whom
Zachary A. Cunha, United States Attorney, was on brief, for
appellee.

August 2, 2022

**SELYA**, **Circuit Judge**.   In United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), and its progeny, this court has upheld the general validity of appeal waivers in criminal cases.   See id. at 23; see also United States v. O'farrill-López, 991 F.3d 45, 48 (1st Cir. 2021); United States v. Almonte-Nuñez, 771 F.3d 84, 88 (1st Cir. 2014); United States v. Nguyen, 618 F.3d 72, 74 (1st Cir. 2010).   Those decisions paint the backdrop for this appeal, in which defendant-appellant David Staveley asks us to override an appeal waiver and allow him to proceed with an appeal based on what he alleges to be the ineffective assistance of his counsel below.   This entreaty runs headlong into the well-established Mala rule, which instructs that a "fact-specific claim[] of ineffective assistance [of counsel] cannot make [its] debut on direct review" when the record is insufficiently "developed to allow reasoned consideration of the claim."   United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993).

In our view, the Mala rule must prevail.   Thus, we hold that ineffective assistance of counsel claims, not raised in the district court and not within an exception to Mala, are inadequate to overcome an appeal waiver.   Consequently, we dismiss the appeal.

**I**

We briefly rehearse the background and travel of the case.   Because this appeal follows a guilty plea, we take the facts from the change-of-plea colloquy, the unchallenged portions of the

- 2 -

presentence investigation report (PSI Report), and the transcript of the disposition hearing.  See United States v. Lessard, 35 F.4th 37, 40 (1st Cir. 2022).

When the COVID-19 pandemic ravaged the nation, Congress created emergency financial assistance programs to ameliorate the economic consequences wrought by the crisis.  See Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).  One of these programs — the Paycheck Protection Program (PPP) — provided small businesses with funds necessary to meet their employees' salaries and other operating expenses.  See id. § 1102, 134 Stat. at 286-94.

In April of 2020, the defendant — along with a co-conspirator — submitted several false and fraudulent loan applications seeking PPP funds.  Those applications were ostensibly made on behalf of various entities, claiming that the entities had several employees and large payrolls.  In reality, those entities — at the time the applications were made — either had no employees at all or paid out no wages in the relevant time frame.

After these machinations came to light, the defendant was charged by criminal complaint in the District of Rhode Island. The affidavit accompanying the complaint alleged in substance that the defendant had committed bank fraud, see 18 U.S.C. § 1344, had conspired to commit bank fraud, see id. §§ 1344, 1349, and had

perpetrated other federal crimes, see 15 U.S.C. § 645(a) & 18 U.S.C. § 371 (conspiracy to make false statements to influence the Small Business Administration); 18 U.S.C. § 1028A (aggravated identity theft). While awaiting trial, the defendant was released on personal recognizance and was later required to stay in home confinement.

In disregard of the conditions of his release, the defendant fled from the state. To avoid apprehension, he staged a fake suicide and — while on the lam — used false identities and stolen license plates. Those events led to an additional federal charge for failing to appear in court. See id. § 3146(a)(1).

Approximately one year later, the defendant — who by then had been charged by a grand jury — agreed to plead guilty to conspiracy to commit bank fraud, see id. §§ 1344, 1349, and to failure to appear in court, see id. § 3146(a)(1). His plea agreement contained a waiver-of-appeal provision, which stated that the defendant agreed to forgo his right to appeal the convictions and sentences imposed so long as the sentences imposed were within or below the guideline sentencing range (as determined by the sentencing court). At the change-of-plea hearing, the district court specifically addressed the waiver-of-appeal provision and confirmed that the defendant understood its significance.

The district court convened the disposition hearing on October 7, 2021. At that hearing, the sentencing court determined the defendant's total offense level and criminal history category. Based on those determinations, the court found that the defendant's guideline range suggested an aggregate sentence between fifty-one and sixty-three months of incarceration.

The government argued for consecutive sentences aggregating a within-Guidelines sentence of fifty-six months. During the course of its argument, the government disputed the defendant's claim that his post-traumatic stress disorder (PTSD) stemmed from an alleged sexual assault while he had been in federal custody for an earlier offense. It noted that the PSI Report sketched an unclear picture of the factual basis for those allegations.

Defense counsel rejoined that the appropriate sentences would be time served with supervised release. He argued — among other things — that the defendant's sentences should be mitigated because the defendant had been diagnosed with PTSD. Although acknowledging that the government had called into question the underlying cause of that PTSD, he countered that he had provided the district court with medical records substantiating the PTSD diagnosis.

When mulling the sentencing factors, the district court commented that "[t]he fact that serving time in prison for [the

defendant] is more difficult because of the PTSD and the things that [the defendant had] been through . . . is something that is awful." Nevertheless, the court concluded that it was "also a risk that [the defendant] knew [he] w[as] taking at the time that [he] w[as] engaging in th[e] behavior." The court then imposed a sentence of forty-four months for the conspiracy charge and a sentence of twelve months for the failure-to-appear charge, to be served consecutively. That aggregate sentence added up to a within-Guidelines sentence. Finally, the court — pursuant to the plea agreement — dismissed the other charges against the defendant.

Shortly after the disposition hearing, the defendant sought and received court-appointed counsel pursuant to the Criminal Justice Act. See id. § 3006A. The defendant's new counsel then brought this timely appeal.

## II

The defendant asserts — for the first time on appeal — that his guilty plea (and, thus, his convictions and his aggregate sentence) should be vacated because his then-counsel afforded him ineffective assistance in derogation of his Sixth Amendment rights both at the time he entered his plea and at sentencing. See U.S. Const. amend. VI; see also Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Hill v. Lockhart, 474 U.S. 52, 58 (1985) (applying Strickland to claims of ineffective assistance in guilty-plea context). As we explain below, this assertion blinks reality.

Although "[t]he Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel," there is no guarantee that a defendant can assert a violation of that right for the first time on direct appeal of a conviction or sentence. United States v. Chambers, 710 F.3d 23, 31 (1st Cir. 2013) (alteration in original) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994)). That admonition is doubly relevant where, as here, a valid waiver-of-appeal provision may operate to preclude the defendant's claims. Our inquiry begins with the threshold issue: whether the waiver-of-appeal provision in the defendant's plea agreement requires dismissal of the defendant's appeal.

**A**

We begin with first principles. In Teeter, we held that a presentence waiver of appellate rights in a criminal case is presumptively enforceable when it is made knowingly and voluntarily. See Teeter, 257 F.3d at 25. At the same time, we rejected the notion that such waivers are invalid simply because they are made before a defendant has any real "clue as to the nature and magnitude of the sentencing errors" that may occur. Id. at 21. Recognizing the "obvious dangers attendant to the practice," though, we held that such waivers must "meet stringent criteria" to ensure that they have been entered into knowingly and voluntarily. Id. at 23.

We also held that "limits must be set on the effect that can be given to [such waivers]." Id. at 24. Although a knowing and voluntary waiver of appellate rights is presumptively enforceable, "no appeal waiver serves as an absolute bar to all appellate claims." Garza v. Idaho, 139 S. Ct. 738, 744 (2019). For instance, a waiver does not apply unless a "claim of error falls within the scope of the waiver." O'farrill-López, 991 F.3d at 48 (citing Teeter, 257 F.3d at 24); see Almonte-Nuñez, 771 F.3d at 88. And because presentence appeal waivers are "made before any manifestation of sentencing error emerges, appellate courts must remain free to grant relief from them in egregious cases." Teeter, 257 F.3d at 25. "[I]f denying a right of appeal would work a miscarriage of justice, the appellate court, in its sound discretion, may refuse to honor the waiver." Id.

With this foundation in place, we turn to the case at hand. As an initial matter, the defendant appears to concede that his appeal falls within the literal scope of the waiver-of-appeal provision. He nonetheless argues, in broad strokes, that the waiver of appeal is nugatory because he did not enter into his guilty plea knowingly and voluntarily. As a fallback, he submits that enforcement of the waiver would result in a miscarriage of justice.

The common thread that runs through the defendant's arguments is his allegation of ineffective assistance of counsel.

The attorney who represented him below was — he says — asleep at the wheel. But that allegation is not properly before us based on our well-established Mala rule and, therefore, does not denature the operation of the defendant's waiver.

To reach this conclusion, our starting point is whether the waiver appears presumptively enforceable. Answering that query will dictate how we evaluate the defendant's asseverational array.

**B**

Under Teeter, we determine whether a presentence waiver of appellate rights was entered into knowingly and voluntarily by looking to the "text of the plea agreement and the content of the change-of-plea colloquy" — the "critically important" sources for a "determination of knowledge and volition." Teeter, 257 F.3d at 24; see Nguyen, 618 F.3d at 74. The waiver's scope must be clear and definite. See Teeter, 257 F.3d at 24; Nguyen, 618 F.3d at 74. The district court also must "question the defendant specifically about [his] understanding of the waiver provision and adequately inform [him] of its ramifications." Teeter, 257 F.3d at 24; see Nguyen, 618 F.3d at 74. "If this appraisal shows that the waiver was made knowingly and voluntarily," it is "presumptively enforceable." Nguyen, 618 F.3d at 74.

Here, the plea agreement and the transcript of the change-of-plea colloquy make manifest that the defendant's waiver

of appellate rights is presumptively valid. The plea agreement "contains a clear statement elucidating the waiver and delineating its scope." Teeter, 257 F.3d at 24. Indeed, the defendant does not argue to the contrary.

The change-of-plea colloquy reflects that the district court's questioning anent the waiver was unimpugnable. The adequacy of such an inquiry "depends on the specifics of the case, including questions asked or statements made by the judge, characteristics of the defendant, and evidence that the defendant understood that he was waiving his right to appeal." United States v. Morillo, 910 F.3d 1, 3 (1st Cir. 2018).

The court below twice inquired whether the defendant understood that — by entering into the plea agreement — he would be relinquishing the right to appeal the sentences to be imposed. Though the district court did not refer specifically to his waived right to appeal the convictions, it confirmed generally that counsel had read and discussed the plea agreement with the defendant and that the defendant understood the agreement's terms. That line of questioning — in the circumstances of this case — was satisfactory to "confirm the defendant's understanding of the waiver and [his] acquiescence in the relinquishment of rights that it betokens." Teeter, 257 F.3d at 24 n.7; see United States v. Rodriguez-Monserrate, 22 F.4th 35, 43 (1st Cir. 2021).

In an effort to blunt the force of this reasoning, the defendant suggests that the court failed to comply with Federal Rule of Criminal Procedure 11(b)(1)(N). That rule requires that when a defendant seeks to waive his right to appeal a sentence while pleading guilty, the district court "must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).

We have held that when a defendant challenges the enforceability of an appeal waiver based on an unpreserved claim of a Rule 11(b)(1)(N) violation, review is only for plain error. See Rodriguez-Monserrate, 22 F.4th at 42; Morillo, 910 F.3d at 3. And in this instance, the record is devoid of any semblance of a Rule 11(b)(1)(N) error, plain or otherwise.

The alleged Rule 11(b)(1)(N) error is based on the brevity of the court's questioning. The defendant insists that the court should have asked more than once about his waiver. More thorough inquiry was required, the defendant argues, because he was not adequately prepared by counsel and was unaware that he was giving up the right to direct appeal of any ineffective assistance claim.

The defendant's arguments are groundless. When the goal is to achieve a clear understanding, brevity can be a plus rather

than a minus. Here, moreover, the district court's inquiry was thorough, and the key question was twice repeated. And, finally, the change-of-plea hearing was not the defendant's first rodeo — he had previously pleaded guilty to federal fraud violations on two unrelated occasions.

We add that nothing contained in the defendant's briefing suggests that the "waiver deserved enhanced scrutiny." Morillo, 910 F.3d at 3. The defendant does not, for example, claim that he was an inexperienced youth, that he did not understand the English language, or that the district court's statements were contradictory. Instead, the defendant's arguments hint that the court should have remediated the supposed ineffectiveness of his own counsel or drilled down to lay bare what kinds of claims would be barred by his waiver. No circumstances in the record suggest the necessity for such granular detail. The district court was entitled to rely on the defendant's representations that he was satisfied with his counsel's handiwork, that he had reviewed the terms of the plea agreement with his counsel, and that he understood all of those terms. See Nguyen, 618 F.3d at 75.

The short of it is that the court's questioning was adequate and certainly clearer than questioning that we have approved in other cases. See, e.g., United States v. De-La-Cruz Castro, 299 F.3d 5, 12 (1st Cir. 2002) (upholding waiver notwithstanding district court's somewhat confusing qualification

- 12 -

that defendant could appeal "in some circumstances" (quotations omitted)).  No more was exigible.

## C

This brings us to the defendant's principal reasons as to why the waiver-of-appeal provision should not be enforced. Those reasons are premised on his claims of ineffective assistance of counsel concerning both his guilty plea and his aggregate sentence.

But "[w]e have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions." Mala, 7 F.3d at 1063; see United States v. Padilla-Galarza, 990 F.3d 60, 93 (1st Cir. 2021); United States v. Tkhilaishvili, 926 F.3d 1, 20 (1st Cir. 2019); United States v. Santana-Dones, 920 F.3d 70, 82 (1st Cir. 2019).  This so-called Mala rule is a "prudential precept" based on practical realities.  Padilla-Galarza, 990 F.3d at 93; see Mala, 7 F.3d at 1063.  Defendants bringing ineffective-assistance claims "must show, first, that counsel's performance was constitutionally deficient and, second, that the deficient performance prejudiced the defense."  Mala, 7 F.3d at 1063 (citing Strickland, 466 U.S. at 687).  Those showings "typically require the resolution of factual issues that cannot efficaciously be addressed in the first instance by an appellate tribunal."  Id.  After all, it is the trial court that "has a

- 13 -

superior vantage from which to 'assess both the quality of the legal representation afforded to the defendant in the district court and the impact of any shortfall in that representation.'" Padilla-Galarza, 990 F.3d at 93-94 (quoting Mala, 7 F.3d at 1063).

To be sure, not all ineffective-assistance claims come within the reach of the Mala rule. We may consider such claims, first brought on direct appeal, in those rare instances when "the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration." United States v. Miller, 911 F.3d 638, 642 (1st Cir. 2018) (quoting United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991)).

The defendant in this case seeks to avail himself of this so-called Natanel exception. But this exception "is narrow, and its applicability depends on the particular circumstances of a given case." Padilla-Galarza, 990 F.3d at 94. Contrary to the defendant's importunings, his claims do not fit within the isthmian confines of the Natanel exception. We explain briefly.

**1**

The defendant asserts — in spite of copious evidence that he fully understood his plea agreement and was satisfied with his representation — that he received ineffective assistance of counsel in advance of the change-of-plea hearing, rendering his guilty plea unknowing and involuntary. He avers that — through fault of his counsel — he was unable to access the discovery

- 14 -

materials while in pretrial custody before the hearing and was generally unaware of the evidence supporting the prosecution. Because he was not apprised of the evidence before agreeing to plead guilty, his thesis runs, he could not have entered into the waiver of appeal knowingly and voluntarily.

This claim is fact-specific and, thus, within the heartland of the Mala rule. Consequently, it would be improvident to address the defendant's one-sided version of the facts on direct appeal.

The defendant acknowledges as much by conceding that the record does not illuminate any issues regarding access to discovery materials. Though he submits extra-record documents on appeal purporting to show that he could not access the evidence while in custody, those submissions are insufficient to ground his claim.

Crucially, the record is tenebrous as to whether counsel's performance was constitutionally deficient. The defendant admitted the government's factual proffer under oath. What is more, he declared that he was satisfied with his attorney's representation. To square these admissions against his nascent claim that he was not seasonably provided with the evidence raises factual questions not only as to the truth of the defendant's claims but also as to whether counsel furnished him with other information, guidance, or advice sufficient to remediate any alleged inability to review the evidence in his case ahead of his

plea. Given the limitations of the record on appeal, there is no principled way that we can answer those questions with "only [the defendant's] word as to what occurred." United States v. Torres-Rosario, 447 F.3d 61, 65 (1st Cir. 2006).

We think it follows that we cannot review these allegations of ineffective assistance in a manner sufficient to assess the enforceability of the defendant's waiver. See United States v. Chandler, 534 F.3d 45, 51 (1st Cir. 2008); see also United States v. Edgar, 348 F.3d 867, 869 (10th Cir. 2003) (declining to address ineffective-assistance claim related to enforceability of waiver despite well-established rule that court "will not enforce a waiver that is the product of ineffective assistance of counsel"). Simply put, the connective tissue necessary to make out the defendant's ineffective assistance of counsel claim concerning his plea lies well outside the record on appeal. That means, of course, that we cannot proceed to find the waiver of appeal unenforceable on this ground.

**2**

The defendant's fallback position is that the waiver-of-appeal provision should not be enforced by reason of the miscarriage of justice exception to the appeal-waiver framework. See Teeter, 257 F.3d at 25. He complains that counsel should have taken further measures to substantiate his claim that he was assaulted while in federal custody to mitigate his sentence. In

the defendant's view, enforcing the waiver to preclude this claim would amount to a miscarriage of justice because the alleged error is of constitutional dimension and occurred after he entered his plea.

Once again, these allegations of ineffective assistance are prematurely before us on direct review. They therefore afford no foothold for refusing to enforce the waiver. On this record, addressing the defendant's allegations of ineffective assistance at sentencing would require us to "play[] blindman's buff." Mala, 7 F.3d at 1063.

For one thing, the record is not transparent on the critical facts as to counsel's performance — the first element of the Strickland test. The record reflects that defense counsel made the district court aware of the PTSD diagnosis stemming from the alleged assault. That counsel did not further substantiate the assault allegations may well have been an informed choice. There is little in the record to explain "why counsel acted as he did." Torres-Rosario, 447 F.3d at 64 (emphasis in original). That sort of "information [is] rarely developed in the existing [appellate] record." Id. And absent such information, "it is virtually impossible to assess what reasoning, if any, guided counsel's actions." Tkhilaishvili, 926 F.3d at 20; see Massaro v. United States, 538 U.S. 500, 505 (2003) (explaining that "appellate court[s] may have no way of knowing whether a seemingly unusual or

misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse").

For another thing, we are confident that the district court would be in a better position to assess the second element of the Strickland test:  whether the defendant has shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  At the disposition hearing, the district court acknowledged the defendant's PTSD "and the things that [the defendant had] been through," which strongly indicates that the court gave at least some credit to the defendant's allegations of assault.  In these circumstances, it would be imprudent for us to guess whether additional substantiation regarding the assault would or would not have altered the court's decisionmaking calculus.  Cf. United States v. Ladd, 885 F.2d 954, 961 (1st Cir. 1989) ("[R]obes and gavels are the tools of a jurist's trade — not tea leaves or crystal balls.").  We are especially reluctant to step into the district judge's shoes when — as in this case — the arguments at issue were designed to influence her discretionary weighing of the sentencing factors.  It would be both more efficient and more desirable for the district judge, in the first instance, to say whether a different balance would have been struck.

Because the defendant's allegations of ineffective assistance at sentencing cannot meaningfully be reviewed on the existing record, they cannot underpin a miscarriage-of-justice claim sufficient to upset an appellate waiver. We have said before — and today reiterate — that it would be absurd to conclude that the enforcement of a waiver would work a miscarriage of justice when "we would decline to hear [the defendant's] claims on direct appeal." United States v. Torres-Estrada, 817 F.3d 376, 379 (1st Cir. 2016). If the simple fact that a defendant can muster claims that might ordinarily be cognizable on appeal was enough to nullify a valid waiver-of-appeal provision, then waiver-of-appeal provisions would be little more than empty vessels. See United States v. Edelen, 539 F.3d 83, 87 (1st Cir. 2008).

"Triggering the miscarriage of justice exception requires, at a bare minimum, an increment of error more glaring than routine reversible error." Nguyen, 618 F.3d at 75. Thus, a defendant will rarely, if ever, carry his burden of showing a miscarriage of justice based on an ineffective assistance of counsel claim falling within the Mala rule.

This makes perfect sense: whether the miscarriage-of-justice exception applies is a fact-specific inquiry, involving a multitude of considerations, such as "the clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the impact of correcting the error on the government,

and the extent to which the defendant acquiesced in the result." Teeter, 257 F.3d at 26.  In the end, the exception requires "an error of significant or constitutional dimension [that] is clear." United States v. Del Valle-Cruz, 785 F.3d 48, 56 (1st Cir. 2015) (emphasis added).

Absent some footing in the record, we cannot determine whether enforcing the waiver would result in a miscarriage of justice.  After all, the clarity of an alleged error — or its lack of clarity — is revealed only by measuring the appellant's argument against the record.  See United States v. Santiago, 769 F.3d 1, 10 (1st Cir. 2014) (identifying "error" as "clear" based on review of sentencing transcript and written judgment); United States v. Rivera-López, 736 F.3d 633, 636 (1st Cir. 2013) (declining to "speculate" regarding information "not before us on th[e] appeal" in addressing claim of error).  And without adequate indicia in the record concerning the impact of an alleged error, there is no reliable way for us to tell whether and to what extent an appellant's claim of unfairness is woven entirely out of strands of speculation and surmise.  See O'farrill-López, 991 F.3d at 50 (rejecting miscarriage-of-justice argument because "impact of the challenged action . . . [wa]s wholly conjectural").

Where, as here, the claimed error is a fact-specific claim of ineffective assistance of counsel raised for the first time on appeal and falling within the Mala rule, the requisite

degree of clarity will almost always be lacking.  See United States v. Torres-Oliveras, 583 F.3d 37, 42-43 (1st Cir. 2009) (rejecting reliance on miscarriage-of-justice exception based on ineffective assistance of counsel where record inhibited assessment of whether attorney's action was erroneous or "strategic" and whether the "sentence would have been different").  The upshot, then, is that when an ineffective assistance of counsel claim cannot be adequately adjudicated based on the existing record, reliance on that claim to show a miscarriage of justice will be fruitless.

To say more would be to paint the lily.  Ineffective assistance of counsel claims — not raised in the district court and not within an exception to Mala — cannot overcome an otherwise enforceable appeal waiver.  So it is here:  we conclude that the defendant's allegations that he received ineffective assistance of counsel fall within the Mala rule and, thus, cannot surmount his waiver of appeal.

**D**

There is one loose end.  Enforcement of a waiver-of-appeal provision ordinarily requires dismissal of the appeal.  When an appellant asserts that counsel's ineffective assistance invalidates his plea agreement, though, the claim usually may be addressed notwithstanding a waiver-of-appeal provision in the plea agreement.  Rudimentary logic teaches that a waiver of appeal will typically fall by the wayside when an appellant "challenges the

validity of the plea itself." United States v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir. 2013) (citing Chambers, 710 F.3d at 27); cf. Teeter, 257 F.3d at 25 n.9 (suggesting that circumstances in which "plea proceedings were tainted by ineffective assistance of counsel" could warrant setting aside waiver based on miscarriage-of-justice exception). If a plea agreement is invalid, then its components — including any waiver-of-appeal provision — are necessarily void as well. See Ramos-Mejía, 721 F.3d at 14.

Here, however, a different outcome is required because the ineffective-assistance claim that targets the plea is brought for the first time on appeal and falls squarely within the Mala rule. When an ineffective-assistance claim is raised for the first time on direct appeal and does not trigger any exception to the Mala rule, we have two options: we may either dismiss the appeal without prejudice, thus allowing the defendant to bring his claim in a collateral proceeding, see, e.g., Padilla-Galarza, 990 F.3d at 94; or — under "special circumstances" — we may remand the claim to the district court for an evidentiary hearing, United States v. Vega Molina, 407 F.3d 511, 531 (1st Cir. 2005). Because no special circumstances are apparent here, dismissal of both claims is the appropriate remedy. The defendant may seek to address his "newly minted ineffective assistance of counsel claim[s]" through "a collateral proceeding brought in the district court under 28 U.S.C. § 2255." Padilla-Galarza, 990 F.3d at 94. At that time, the

district court also can address the defendant's piggybacked claim that the ineffective assistance of his counsel regarding the discovery materials undermined his guilty plea.

## III

We need go no further.  Waivers of appeal are important tools in the plea-bargaining process.  This case, however, is less about waivers of appeal and more about the Mala rule:  a "fact-specific claim[] of ineffective assistance [of counsel] cannot make [its] debut on direct review" when the record is insufficiently "developed to allow reasoned consideration of the claim."  Mala, 7 F.3d at 1063.  For the reasons elucidated above, we dismiss the appeal; without prejudice, however, to the right of the defendant, should he so elect, to prosecute his ineffective assistance of counsel claims in a collateral proceeding under 28 U.S.C. § 2255.

**Dismissed without prejudice**.