**UNITED STATES of America,**
**Appellee,**

v.

**Alan A. AKER, Defendant, Appellant.**

**No. 98–1900.**

United States Court of Appeals,
First Circuit.

Heard June 7, 1999.

Decided June 28, 1999.

Lois M. Farmer, by appointment of the court, with whom Garnick & Scudder, P.C. was on brief for appellant.

James F. Lang, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for the United States.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

Alan Aker pled guilty to two drug offenses and one firearms offense and was sentenced to 121 months in prison. He now appeals, saying that the district judge should have allowed him to withdraw his guilty plea and that the judge erred in fixing his sentence. The facts that follow are drawn from the pre-sentence report and the testimony in the district court. *United States v. Egemonye*, 62 F.3d 425, 426 (1st Cir.1995).

In September 1993, the police obtained a warrant to search Aker's house and car for cocaine and paraphernalia. After watching Aker conduct from his car an apparent drug transaction, the police searched the car, finding two bags of cocaine (a total of 6.7 grams) in the driver's-side ashtray, a handgun in the glove compartment, and an additional 27.3 grams of powder cocaine and 26.6 grams of crack cocaine hidden in a cooler in the back of the car. On his arrest Aker was carrying $1,084 in cash, and a search of his house revealed another 1.33 grams of crack cocaine and seven firearms, four of which were stolen.

Aker was then indicted by a grand jury and released pending trial. By a superceding indictment returned in September 1994, Aker was charged with four offenses: possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); possession with intent to distribute cocaine base, *id;* use and carriage of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c); and possession of stolen firearms, 18 U.S.C. § 922(j). These charges were pending against him when his trial began about a year later.

After his indictment but before trial, the police witnessed another apparent drug transaction involving Aker. On March 14, 1995, a confidential informant set up a monitored purchase with Aker, who told the informant that he (Aker) would leave an agreed-upon amount of drugs under a designated dumpster. After the confidential informant provided Aker with the money, the police found the designated drugs (6.5 grams of crack cocaine) under the dumpster. This incident was not included in Aker's indictment and conviction, but it was considered relevant conduct for the purposes of sentencing.

At Aker's trial in June 1995, Aker's lawyer admitted in his opening that the drugs in the front of Aker's car belonged to Aker

but said they were intended for personal use and that Aker knew nothing of the drugs in the back; the latter, said counsel, had been placed there by Tony Jones, the boyfriend of Aker's sister Karen. Two days later, as the trial continued, the prosecutor advised the defense that he had learned that Tony Jones was an informant for the Fitchburg police and that Jones had denied owning the drugs in the back of the car; instead, Jones claimed to have agreed with Aker to testify falsely that the drugs belonged to Jones.

Aker then struck a deal with the government, which agreed to dismiss the firearm count under section 924(c) in exchange for Aker's guilty plea on the other three counts. Since section 924(c) carries a mandatory consecutive sentence of five years, 18 U.S.C. 924(c)(1)(A)(i); U.S.S.G. § 2K2.4, the benefit of the bargain to Aker was obvious. The judge conducted a change of plea hearing in which Aker admitted that he had committed the drug crimes charged in the indictment and had known that firearms kept in his house were stolen. The judge accepted the guilty pleas to the three counts in question, dismissed the 924(c) count, and ordered a pre-sentence report.

The first pre-sentence report (there were later amendments) was issued in August 1995 and was contested in several respects by Aker's attorney. Delays then ensued. Aker's trial attorney withdrew in January 1996, and in April 1996, Aker filed a pro se motion to withdraw his guilty plea. A new defense counsel was appointed and a psychological evaluation obtained for Aker. On April 6, 1998, the district court held a hearing on Aker's motion to withdraw the guilty plea and received testimony—discussed below—from Aker, his sister Deborah, and Dr. Ebert, the psychologist retained to examine Aker.

Following the hearing, the district court denied Aker's motion to withdraw his guilty plea. Thereafter, Aker filed a motion in May 1998, requesting a downward departure. At sentencing on July 15,

1998, the district court denied the departure request and also refused to make a reduction in the offense level for acceptance of responsibility. Instead, attributing to Aker the drugs seized in September 1993 and March 1995, the court computed the base offense level at 28, enhanced this figure two levels for possession of the gun found in the glove compartment, and sentenced Aker (at the bottom of the resulting range) to 121 months.

 On appeal, Aker's first claim is that the district court erred in refusing to allow him to withdraw his guilty plea. The district court may permit withdrawal of a guilty plea before sentencing if the defendant shows this to be "fair and just," Fed. R.Crim.P. 32(e); but the district court's findings of fact are reviewed only for clear error, and "we accord considerable deference to the firsthand assessment ultimately made by the district court, which must be affirmed absent a demonstrable abuse of discretion." *United States v. Marrero–Rivera*, 124 F.3d 342, 348 (1st Cir.1997).

 There is no exclusive list of reasons that might allow withdrawal of a plea, but a primary concern is whether the original guilty plea was knowing, intelligent and voluntary under Fed.R.Crim.P. 11. *Marrero–Rivera*, 124 F.3d at 347. Other factors commonly mentioned are the plausibility and weight of the reason given for the withdrawal, the timing of the request, whether the defendant is now colorably asserting legal innocence, and whether the original plea was pursuant to a plea agreement (and thus, in the usual case, gained something for the defendant). *Id.*

When Aker pled guilty in 1995, Rule 11 was followed to the letter, and Aker squarely admitted that all of the drugs in the car were his and that he knew that some of the guns in the house had been stolen. Aker's best argument for involuntariness is, as Dr. Ebert testified, that at the time of the plea Aker was depressed over his wife's death (which allegedly led to his involvement in drugs), had gone

without sleep during the trial, and had difficulty concentrating. Further, says Aker, his attorney had indicated that Aker was headed for conviction and stressed the benefit of getting the section 924(c) count dismissed. All of this, it is argued on appeal, made his plea less than voluntary.

However, Dr. Ebert testified only that Aker was depressed and the district judge found that Aker "was never depressed to a degree that deprived him of the capacity to make a knowing and voluntary choice...." The district court also discounted Dr. Ebert's testimony because the court found it was based in part on crediting statements Aker made to Dr. Ebert, statements that the court said were materially false. No doubt at some point mental afflictions can undermine a guilty plea, but in this instance the district court's assessment was certainly not clearly erroneous.

Aker also says that he did not understand that dismissal of the section 924(c) count left the district judge free in computing the sentence to add two levels because the gun was found in the glove compartment. U.S.S.G. § 2D1.1(b)(1). The two-level adjustment, which the judge might or might not find warranted, was a far cry from a mandatory five year minimum sentence, to be served consecutively to other sentences, that would have followed automatically from a conviction under section 924(c). Whatever Aker may have supposed, he got just what the government promised, namely, a dismissal of the section 924(c) charge. A guilty plea is not vulnerable merely because the defendant's own expectations as to the guideline range go amiss.

Aker's other potential argument in favor of withdrawal, although not much stressed on this appeal, was a claim of innocence at least as to the drugs in the back of the car, including the crack that gave rise to a heavy sentence. At the change of plea hearing, Aker testified—contrary to his earlier alibi—that the drugs belonged to his sister, Deborah. What made this less farfetched was that Deborah also so testified at the hearing, although her version of events would have made her guilty only of possession and not of trafficking. It is enough to say that the district judge was not clearly erroneous in choosing to credit Aker's outright admission in the plea hearing that all of the drugs were his.

■ Aker himself admitted that his desire to withdraw the guilty plea was prompted, at least in part, by two other factors. One was that, contrary to Aker's hope, Congress failed to agree to a proposed reduction in the guideline sentences for crack cocaine. The other was that the Supreme Court's intervening decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), stiffening the requirements for conviction under section 924(c), made the dismissal of that count somewhat less valuable than it at first appeared.[1] Neither of these motives goes to the voluntariness of the plea or Aker's guilt on the counts to which he pled guilty, and both suggest that Aker's involuntariness claim owed something to an after-the-fact recalculation of risks and rewards.

■ Aker's next ground of appeal is his claim that the district court miscalculated his guideline range in three different respects: the firearms enhancement, the obstruction of justice enhancement, and the denial of a reduction for acceptance of responsibility. We review the district court's findings of fact in sentencing for clear error, *see United States v. McDonald*, 121 F.3d 7, 9 (1st Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 725, 139 L.Ed.2d 664 (1998), and determinations of law *de novo*, *see United States v. Fontana*, 50 F.3d 86, 87 (1st Cir.1995). Departure

---

1. Aker misunderstands the pertinence of *Bailey*. While that decision made it less likely that he would have been convicted for using a firearm in relation to a drug crime, it did nothing to protect him from conviction on the

"carry" prong of the statute, also charged in the indictment. *See Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 1914, 1919–20, 141 L.Ed.2d 111 (1998).

denials are subject to more restricted review.

■ Starting with the firearms enhancement, the critical point is that section 924(c)'s "use or carry" language and the restrictive gloss from *Bailey* are not used in the guideline. Instead, U.S.S.G. § 2D1.1(b)(1) prescribes a two-level enhancement for drug trafficking crimes "[i]f a dangerous weapon (including a firearm) was possessed," and the commentary explains that possession alone is enough; because of the increased danger posed, the enhancement should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, app. note 3; *United States v. Berrios*, 132 F.3d 834, 839 (1st Cir.1998).

Here, Aker had the gun in the glove compartment of his car while transporting and dealing drugs. The claim that he merely possessed drugs for his own use was refuted by his guilty plea and by his witnessed involvement in at least one, and arguably two, sales. This is nothing like the case, which the guideline note says does not warrant enhancement, of a defendant arrested at home who happens to have "an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1, app. note 3. In all events, the district court did not clearly err in finding that the gun was present and in explicitly declining to find that weapon was unconnected with the offense.

■ Aker next attacks the two-level enhancement imposed under U.S.S.G. § 3C1.1; it applies where the defendant willfully obstructed, or attempted to obstruct, the administration of justice during the prosecution of the case. Examples include perjury, attempted subornation of perjury, and providing materially false information to a judge. *Id.*, app. notes 3(c), 3(f). On appeal, Aker says that the trial judge was confused in his appraisal of false statements Aker allegedly made to Dr. Ebert and that the record lacks the kind of particularized findings allegedly needed to establish a willful obstruction of justice.

■ Although particularized findings are certainly helpful, *cf. United States v. Dunnigan*, 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the ultimate question is whether the district judge did find a willful obstruction or attempted obstruction and whether the evidence supports these findings. In this case, the district court's ultimate finding is explicit and the evidence was ample to show Aker's knowing participation in a scheme with Jones to provide false evidence as to ownership of the drugs in the back of the car. The district judge explicitly relied on this event, referring at the sentencing to Aker's decision to "choose the course ... of encouraging false testimony...."

It is unclear from the transcript whether the judge was relying at all on false statements made to Dr. Ebert; but even if that episode is disregarded, the Jones episode was clearly in the district court's mind and was a sufficient basis for the enhancement. The district court also relied on "false testimony" presented by Aker himself in court—apparently referring to Aker's post-plea denial that he owned the drugs in the back of the car. This too was a permissible basis for an obstruction enhancement since, if the testimony was false (and it contradicted the plea), it was certainly willful.

■ The district court's refusal to accord a reduction in offense level for acceptance of responsibility needs less discussion. Aker went to trial, pled only when his perjury scheme was foiled, dealt drugs while on release, and lied to the district court on more than one issue. On this record, no judge would likely have found acceptance of responsibility, and the denial was certainly not clear error. Aker is fortunate not to have been independently prosecuted for obstruction and for the second drug offense.

■ Finally, Aker says that the district court erred in refusing to grant him a

downward departure. He sought such a departure on the grounds that, *inter alia*, his conduct was "aberrant behavior," *cf. United States v. Grandmaison*, 77 F.3d 555, 560–61 (1st Cir.1996), and was caused at least in part by diminished mental capacity, *see* U.S.S.G. § 5K2.13, and physical and emotional condition, *see* U.S.S.G. §§ 5H1.3, 5H1.4. Of course, the refusal to grant a downward departure is not generally reviewable on appeal, *Grandmaison*, 77 F.3d at 560; but an exception exists where the district court misunderstands its own legal authority to depart, *id.*

■ We address only the guideline specifically permitting a departure where "the defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13.[2] Aker contends that the district judge misunderstood the legal standard because the judge said several times that he thought that the departure was "discouraged" and certainly not "encouraged." When the prosecutor supported the defendant on this point of vocabulary, the district judge ultimately declared that the label did not matter because the guideline still called for a particularized finding as to basis that the district court felt it could not make.

The district court was right that in the colloquial sense of the term, nothing in the diminished capacity guideline "encourages" a departure for significant diminished capacity: the guideline merely says that in such a case, a departure "may be warranted." The confusion arises simply because this and other appellate courts have described such departures as "encouraged" in contrast to other possible grounds of departure that are affirmatively forbidden (*e.g.*, race) or "discouraged" in the sense that they "ordinarily" are not bases for departure—exemplified by the physical and emotional condition rubrics that Aker also sought to invoke. U.S.S.G. §§ 5H1.3, 5H1.4. If the sentencing transcript stood alone, we might feel confident that by the end of the colloquy, the labels played no part in the outcome. However, the judgment ultimately entered by the district judge—admirably containing a separate memorandum on sentencing—perpetuates the confusion. In the single paragraph directed explicitly to Aker's request for a downward departure, the court rejects aberrant behavior as a ground and then continues:

> I do find diminished physical capacity, 5K2.13, and emotional condition, 5H1.3. But I do not consider the proposed departure an encouraged departure. Rather, it is a discouraged departure, and I am not able to find exceptional circumstances that would warrant departure.

The statement is correct that physical and emotional condition are discouraged grounds; but there is no mention of diminished mental capacity (except for the citation to § 5K2.13 which was probably a typographical error) even though that was Aker's best and most fully argued ground for a departure. One is left with the impression—reinforced to some extent by the transcript—that the district court was conflating two discouraged grounds of departure (physical and emotional condition) with a final, related ground (diminished mental capacity) which—albeit not "encouraged" in the colloquial sense—is not in any sense a "discouraged" ground of departure.

The government, to its credit—and we commend the prosecutor for his candor—also calls our attention to another statement by the district judge that "even pressures resulting from diminished capacity

---

2. The aberrant behavior ground is not specifically described in the departure section of the guidelines but has been derived from a reference to treatment of first-time offenders in the introduction to the guidelines. *Grandmaison*, 77 F.3d at 560–61. It is enough to say here that nothing whatever suggests that the district judge misunderstood the legal standard, and Aker's appeal is simply an attempt to litigate the merits of the denial, which he may not do, and which would be unsuccessful even if he could.

are not the equivalent of a total excuse for moral agency. He still had a choice and his choice was not totally forced upon him." If this statement were read as requiring that diminished mental capacity be the sole cause of defendant's crime, it would conflict (as the government recognizes) with our decision in *United States v. Lauzon*, 938 F.2d 326, 331 (1st Cir.), *cert. denied*, 502 U.S. 972, 112 S.Ct. 450, 116 L.Ed.2d 468 (1991), which requires only that defendant's significantly reduced mental capacity have "contributed to *some* extent to the commission of the offense."

The district judge's just quoted remark was actually made in the course of explaining why the judge would not grant a two-level downward adjustment for acceptance of responsibility; the district judge probably meant (quite correctly) that Aker was still not accepting full responsibility for his crimes. No one thought enough of the statement to object to it at sentencing, and on appeal Aker merely mentions the remark in passing. Still, it is hard to be completely sure that the distinction between sole cause and contributing cause had no connection with the diminished capacity issue, which was specifically mentioned.

Realistically, we think it quite unlikely that the district court's decision was affected by the label attached ("discouraged" versus "encouraged") or by any belief that diminished capacity had to be the sole cause of the crime. Aker's main evidence in support of his diminished capacity claim was the assessment that Dr. Ebert made five years later, which itself was guarded and only favorable to the claim of diminished capacity; and, in addition, the district court made clear that it regarded the report as seriously undermined by lies that Aker continued to serve up to Dr. Ebert, primarily designed to understate the length and severity of his criminal career continuing long after his wife's death.

Nevertheless, there is one fully valid objection (the use on several occasions of the "discouraged" label for diminished capacity departures), a slight although un-

preserved concern as to the causation test, and the conflation both in the transcript and in the sentencing memorandum of the diminished capacity departure with other less favored grounds of departure. Since the consequences are important and the district court can easily clear up any uncertainty, we think that in the interests of justice, a remand on this single issue is warranted. If our clarifications do not affect the outcome, the district judge is free to say so in a single sentence.

Accordingly, the judgment of conviction is *affirmed* but the sentence is vacated solely with respect to the request for a possible departure on grounds of significantly diminished mental capacity, and the case is *remanded* for further consideration of that issue in light of this opinion, with or without further proceedings as the district court may see fit and without prejudice to reimposition of the same sentence.

*It is so ordered.*