# United States Court of Appeals
## For the First Circuit

No. 19-1331

UNITED STATES OF AMERICA,

Appellee,

v.

IESÚS JUAN NIEVES-MELÉNDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Kayatta, Howard, and Gelpí,
Circuit Judges.

Laura Maldonado Rodríguez for appellant.
Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, were on brief,
for appellee.

January 26, 2023

**HOWARD, <u>Circuit Judge</u>.** Iesús Juan Nieves-Meléndez challenges the district court's denial of his motion to withdraw his guilty plea and its drug-quantity calculation under the Sentencing Guidelines. Finding his arguments unavailing, we affirm his conviction and sentence.

## I.

We assume familiarity with the record.[1] Nieves pleaded guilty to possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). As indicated above, two parts of the record are at issue in this appeal: the district court's drug-quantity calculation for sentencing and its denial of Nieves's motion to withdraw his guilty plea. We address the background of each in turn.

## A.

As part of the plea agreement he reached with the government in August 2018, Nieves admitted to possessing 87.23 grams of marijuana with the intent to distribute. However, the presentence investigation report ("PSR") prepared by the U.S. Probation Office calculated his Sentencing Guidelines range based

---

[1] The background and circumstances of Nieves's arrest is explored in more detail in our decision in <u>United States</u> v. <u>González-Andino</u>, No. 18-2155 (1st Cir. 2022).

on a converted quantity of 39.2 kilograms of marijuana, which was the equivalent of all the drugs seized from the apartment in which Nieves and his three codefendants were arrested. Nieves urged the court three times to adopt the plea agreement's drug-quantity calculation over that of the PSR: first in his sentencing memorandum to the district court, then -- after the court ordered him to do so -- in a formal objection to the PSR, and finally during his sentencing hearing. In the first two instances, he argued that the court was not obligated to hold him accountable for all the drugs found in the apartment under the Guidelines. The Probation Office countered by arguing that it was entitled to factor in the total amount of drugs seized from the apartment under the "relevant conduct" provisions of U.S.S.G. §1B1.3.

During the sentencing hearing, Nieves argued that the PSR amount was "not correct" and that -- as further explored below -- he never admitted to possessing the larger PSR quantity. The court explicitly said that it used the PSR calculation because "even though [the full drug quantity was] not charged, [it is] considered relevant conduct."

**B.**

The district court's denial of Nieves's motion to withdraw his guilty plea is the other primary issue in this appeal. As noted above, Nieves pleaded guilty to two counts of the indictment against him in August 2018. As part of the plea

- 3 -

agreement's factual stipulations, Nieves "acknowledge[d] that the possession of the . . . firearms [found in the apartment in which he was arrested] was in furtherance of a drug trafficking crime" and that "he possessed with intent to distribute 87.23 [grams] of [marijuana]." He also "acknowledge[d] . . . that he [was] pleading guilty freely and voluntarily because he is guilty." Nieves further confirmed both that his plea was voluntary and that he agreed with the substance of the plea agreement's factual stipulations during the change-of-plea hearing.

Nevertheless, Nieves moved to withdraw his guilty plea nearly six months after this colloquy, at a hearing that originally was intended for his sentencing. Despite the fact that he had previously agreed twice to the substance of the plea agreement's factual stipulations, he told the district court that he was "at that [apartment] and I was sleeping there, but I am being judged for something that was happening of which I had no knowledge" and thus wished to withdraw his plea.[2] Nieves further detailed in a written motion to the court that he sought the withdrawal because "he faces being sentenced for facts other than what he conceded in his plea" (i.e., the PSR's larger drug quantity), and that "[h]e

---

[2] As Nieves notes in his brief to us, his contention that he did not live in the apartment accorded with statements that he made to federal agents on the day of his arrest that he was in the apartment in order to "hid[e] from the police since he had an active . . . arrest warrant for a double murder in Aibonito, Puerto Rico."

did not understand that by pleading guilty to [the drug possession count] and accepting certain facts, that he would be pleading guilty to other alleged facts, and . . . sentenced accordingly."

The district court denied this motion and, in doing so, adopted the government's justifications for opposing it: namely, (1) that the district court's explanation to Nieves that it could impose a sentence in excess of the proposals in the plea agreement belied the notion that Nieves did not understand the sentencing consequences of his plea, and (2) that both the lack of an explicit claim of innocence in his motion and the nearly six-month gap between the colloquy and Nieves's attempt to withdraw his plea illustrated that he did not meet the standard for such a grant of relief. Despite this, Nieves reiterated at his sentencing hearing that he never admitted to the PSR's drug-quantity calculation as part of his plea agreement, since he told his counsel before signing the agreement that "I am not going to sign anything admitting I was doing anything [in the apartment], because what I was doing was sleeping." The court rejected Nieves's argument and told him that he should have refused to sign the agreement if that were the case.

Ultimately, having denied Nieves's motion to withdraw his plea and relying on the PSR's Guidelines drug-quantity calculation, the district court sentenced Nieves to a total of 72 months of imprisonment for both of the charges to which he pleaded

guilty.  Because the combined sentence exceeded 66 months, the government concedes that the waiver-of-appeal provision in Nieves's plea agreement does not apply.  This appeal followed.

## II.

As noted above, Nieves argues that the district court erred both in denying his motion to withdraw his plea and in using the PSR's drug quantity in calculating his Guidelines range.  We address each argument in turn.

## A.

"When the issue is preserved, 'we review the district court's denial of . . . a motion [to withdraw a guilty plea] solely for abuse of discretion.'"  United States v. Williams, 48 F.4th 1, 8 (1st Cir. 2022) (quoting United States v. Flete-Garcia, 925 F.3d 17, 24 (1st Cir. 2019)).  Despite this standard being "highly deferential," United States v. Vázquez-Martínez, 812 F.3d 18, 26 (1st Cir. 2016) (quoting United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014)), our review also recognizes that the district court's discretion "may be 'somewhat more limited' when one of [Fed. R. Crim. P.] 11's core concerns is implicated," Williams, 48 F.4th at 8 (quoting United States v. Abbott, 241 F.3d 29, 33 (1st Cir. 2019)).  See also United States v. Kitts, 27 F.4th 777, 784 (1st Cir. 2022) (listing the "core concerns" of Rule 11 as "(1) absence of coercion, (2) understanding of the charges, and

(3) knowledge of the consequences of the plea" (quoting United States v. Pimentel, 539 F.3d 26, 29 (1st Cir. 2008))).

Because Nieves attempted to withdraw his guilty plea after the court's prior acceptance thereof, he had the burden of "show[ing] a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In deciding whether a defendant has proffered a "fair and just reason" for withdrawal, a district court "must take into account the totality of the relevant circumstances." Flete-Garcia, 925 F.3d at 24. While we have never claimed to set forth an "exclusive list of reasons that might allow withdrawal of a plea," United States v. Gardner, 5 F.4th 110, 114 (1st Cir. 2021) (quoting United States v. Aker, 181 F.3d 167, 170 (1st Cir. 1999)), our cases point to the following factors as worthy of a district court's consideration when evaluating a Rule 11(d)(2)(B) claim:

> (1) whether the original plea was knowing, intelligent, and voluntary and in compliance with Rule 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the government would suffer prejudice if withdrawal is permitted.

Id. Nevertheless, "[d]espite its permissive nature, th[e] [fair and just reason] standard 'does not endow [a defendant] with an unfettered right to retract a guilty plea.'" Flete-Garcia, 925

F.3d at 24 (third alteration in original) (quoting United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014)). Indeed, "'buyer's remorse' is not a valid basis on which to dissolve a plea agreement and 'the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea.'" Moreno-Espada v. United States, 666 F.3d 60, 67 (1st Cir. 2012) (second quoting United States v. Mercedes Mercedes, 428 F.3d 355, 359 (1st Cir. 2005)).

On appeal, Nieves claims that the district court abused its discretion in denying his motion to withdraw his plea because it discredited what he characterizes as his repeated claims of innocence and failed to ascertain whether Nieves "understood that the court could find that he possessed a greater amount of drugs" than the quantity specified in the plea agreement.[3] We address each claim in turn.

---

[3] Nieves also appears to intimate -- albeit in a fashion that is "not a model of clarity," United States v. Isom, 580 F.3d 43, 54 (1st Cir. 2009) -- that the district court ran afoul of its obligation under Rule 11(b)(3) "to determine whether there is a factual basis for a guilty plea." Pimentel, 539 F.3d at 29. He claims that the court should have found that no basis existed under either aiding and abetting or constructive possession theories, which were the two theories under which the parties appear to have proceeded in this case. But we need not address this argument. To the extent that Nieves meant to present an argument that the district court committed error under Rule 11(b)(3), he both forfeited it by not raising this argument before the district court, and then waived it before us "because he does not even attempt to meet the four-part test" of plain error review. United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016).

**i.**

As a preliminary point, and as Nieves acknowledges himself, "the timing of [his] request to withdraw his guilty plea is bad." While the nearly six-month gap between his guilty plea and withdrawal attempt is not dispositive, "[t]his extended delay weighs against permitting withdrawal." United States v. Dunfee, 821 F.3d 120, 131 (1st Cir. 2016). Indeed, we have found on multiple occasions that delays as short as two months between

---

The same section of his appellate brief also appears to sketch out an argument for ineffective assistance of counsel. Nieves argues that his "assertions of innocence to counsel should have prevented counsel from advising him to plead guilty" and, similarly, that "[i]f [he] insisted to counsel that he was innocent, counsel's advi[c]e to plead guilty was contrary to the legal principles of aiding and abetting or constructive possession." But that is also where Nieves's ineffective assistance argument ends -- at no point does he attempt to link his counsel's conduct to any case law, nor does he even mention the phrase "ineffective assistance of counsel" in the relevant section of his brief. We cannot gainsay the importance of a criminal defendant's constitutional right to effective assistance of counsel, "a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). But, "[a]s a general rule, this court does not review ineffective assistance of counsel claims on direct appeal." United States v. Vázquez-Larrauri, 778 F.3d 276, 293 (1st Cir. 2015). And the exception "where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim" cannot apply in a situation where the defendant has only made a cursory attempt to address the issue and where we have no indication of "why counsel acted as he did." Id. at 293-294 (first quoting United States v. Reyes, 352 F.3d 511, 517 (1st Cir. 2003), then quoting United States v. Torres-Rosario, 447 F.3d 61, 64 (1st Cir. 2006)); cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). We therefore decline to address any such claim.

guilty pleas and withdrawal attempts counsel against permitting withdrawal, especially when a defendant has received an unfavorable PSR. See, e.g., id. ("[W]e look skeptically on motions to withdraw which follow closely on the heels of the issuance of an unfavorable PSR, as was the case here."); United States v. Santiago Miranda, 654 F.3d 130, 132-134, 140 (1st Cir. 2011) (finding that, when a defendant moved to withdraw his guilty plea over two months after his entry thereof and after he had received an unfavorable PSR, "[t]hese circumstances suggest that it was a recalculation of risks and benefits -- not involuntariness -- that produced [his] change of heart"); United States v. Pagan-Ortega, 372 F.3d 22, 31 (1st Cir. 2004) ("The two month lag between the plea hearing and appellant's motion to withdraw places it well within the area of vulnerability because of untimeliness.").

This rationale applies with even stronger force to the nearly six-month delay in Nieves's case, especially given that Nieves appears to have at least partly linked his desire to withdraw his plea to the larger drug quantity the PSR attributed to him. He informed the district court after a colloquy the court had with his counsel about his withdrawal request that "what I would like to have happened is for the plea agreement to be complied with, with respect to the 66 months."

Simply put, the motive behind Nieves's attempt to withdraw his plea appears to be his objection to being held

responsible for a larger drug quantity than the plea agreement specified, a fact which -- as the district court informed him during the change-of-plea hearing -- could only become clear once he was furnished with the PSR in the months after his guilty plea. Cf. United States v. Fernández-Santos, 856 F.3d 10, 18 (1st Cir. 2017) ("The timing of a motion to withdraw a guilty plea is important, as we have said before, because it is 'highly probative of motive.'" (quoting United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992))). As further explored below, that alone will not suffice as a "fair and just reason" for withdrawal in the absence of other factors mentioned in our case law.

**ii.**

Even beyond the timing issues, we are unpersuaded that the claims that Nieves raises constitute "fair and just reason[s]" for withdrawal. First, his purported innocence claim is belied both by his own admissions to the district court during his allocution and by the plea agreement to which he voluntarily agreed. We acknowledge that Nieves made multiple, consistent statements that he did not live in the apartment in which he was arrested. Perhaps most significantly, he explained to the district court that he told his counsel prior to signing the plea agreement that "I couldn't admit possession of all those items because that's not my home," that "I am not going to sign anything admitting that I was doing anything [in the apartment], because what I was doing

- 11 -

was sleeping" and, when asked about his desire to withdraw his plea, that "I accepted responsibility because, yes, I was at that place and I was sleeping there, but I am being judged for something that was happening of which I had no knowledge."

But these statements alone do not suffice for an innocence claim. We have long warned that "[m]erely voicing a claim of innocence has no weight in the plea-withdrawal calculus; to be given weight, the claim must be credible." Fernández-Santos, 856 F.3d at 19 (quoting United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013)). To that end, Nieves's claims are lacking because they are directly contradicted by his plea allocution and agreement. As part of the agreement, Nieves "adopt[ed] the Stipulation of Facts and agree[d] that the facts therein are accurate in every respect." The Stipulation, in turn, specified that Nieves "acknowledges that the possession of the aforementioned firearms was in furtherance of a drug trafficking crime" and that "he possessed with intent to distribute 87.23 [grams] of [marijuana]." The district court further confirmed Nieves's understanding of the stipulated facts during the change-of-plea hearing, with Nieves responding "yes" after the court asked him "is this what you did?" as to descriptions of the evidence for each of the charges that mirrored the Stipulation. Our precedent supports the conclusion that these inconsistencies render Nieves's innocence claim insufficiently credible to warrant a reversal of

the district court's decision to deny his plea-withdrawal motion on abuse of discretion review. See, e.g., Santiago Miranda, 654 F.3d at 139 ("Not only did Santiago sign the plea agreement, in which he acknowledged that he was guilty of the conspiracy charged in . . . the indictment and admitted the truth of the 'Stipulation of Facts' section, he also acknowledged several times under oath at the change-of-plea hearing that he was, in fact, guilty."); Isom, 580 F.3d at 53 (finding that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea in part because, "as the district court noted, Isom's claim of innocence flies in the face of several admissions to the contrary").[4]

More generally, the district court was entitled to rely on Nieves's statements under oath when faced with inconsistencies between them and his later protestations of innocence. Cf. Santiago Miranda, 654 F.3d at 138 (noting that "a defendant's 'declarations in open court carry a strong presumption of verity'" on which the district court is entitled to rely (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977))). We will not disturb the

_____

[4] Separately, Nieves's statement that he "couldn't admit possession of all those items because that's not my home" is not a "serious claim of actual innocence" as to the charged conduct, but rather appears to be aimed at the PSR's drug-quantity calculation. Gardner, 5 F.4th at 114. Claiming innocence as to one quantity of drugs but not another does not constitute a claim of actual innocence with respect to the drug-trafficking conduct to which Nieves pleaded guilty.

district court's decision to credit Nieves's statements in his plea colloquy absent "highly specific [allegations of infirmities] accompanied by some independent corroboration." United States v. Pulido, 566 F.3d 52, 59-60 (1st Cir. 2009) (emphasis omitted) (quoting United States v. Butt, 731 F.2d 75, 80 n.5 (1st Cir. 1984)).  And Nieves makes no such showing here.  While he pointed the district court to the fact that "there is no mention of me in the surveillance or anything because I don't live there," a lack of evidence that Nieves resided in the apartment does not constitute independent corroboration of the conclusion that Nieves had no knowledge of the guns or drugs found therein.  To his credit, Nieves also more plausibly points to his objection to the PSR, in which he stated that "[p]olice found controlled substances in the apartment but did not find any in the room where [Nieves] was sleeping, much less on his person nor on or under the bed." But that statement is belied by the fact that police found both ammunition and drug paraphernalia in the room in which Nieves was found.  Therefore, even to the extent that Nieves does offer independent corroboration for his innocence claim, we do not find it credible.  We accordingly determine that his innocence claim does not constitute a "fair and just reason" for the withdrawal of his plea.

**iii.**

We are equally unpersuaded by Nieves's contention that he "was not fully advised that he could be held accountable for a greater amount of drugs" than the "250 grams of [marijuana]" upon which the plea agreement based its Guidelines calculation. While a defendant's "knowledge of the consequences of a guilty plea" is a "core concern[] of Rule 11" to which we pay heightened attention on abuse of discretion review, we nevertheless find Nieves's argument unavailing because it is flatly contradicted by the record. Williams, 48 F.4th at 6 (first quoting United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995)). The plea agreement noted that Nieves understood that the district court had sole discretion over his sentence, that the court was "not bound by [the plea] agreement or the sentencing calculations and recommendations contained [therein]," and that the court had the right to reject the plea agreement. At his change-of-plea hearing, the court also explicitly asked Nieves whether he understood (1) "that the terms of the plea agreement are recommendations to the Court," (2) "that I can impose a sentence on you, as to Count Three, the drug count, which is less severe or more severe than the sentence you may anticipate, or even the sentence being recommended in the plea agreement," (3) "that[,] as to Count Three, the drug count, I won't be able to determine what the [G]uideline sentence for your case will be until after I receive a pre-sentence

investigation report," and -- perhaps most significantly -- (4) "that the sentence that I may impose upon [you] may be different from any estimate that [counsel] may have given you and even different from what is being recommended in the plea agreement." Nieves responded that he understood each of these ramifications. And the district court also conducted an extensive colloquy with Nieves to ensure that he was both competent to plead guilty and understood the suite of rights that he was voluntarily forfeiting by doing so. See Pagan-Ortega, 372 F.3d at 29 ("Our review of the court's dialogue with appellant reveals that the court clearly and comprehensively explained both the rights he was foregoing, as required under Rule 11(b), as well as the precise charges and sentencing details. We have every reason to accord credit to appellant's affirmative responses . . . .").

While neither the plea agreement nor the district court explicitly mentioned the potential for discrepancies in drug-quantity calculation between the plea agreement and PSR, Nieves cites to no case law suggesting any requirement of such a specific warning. In the context of that absence, we cannot say that the district court was required to find that Nieves's ostensible lack of understanding of the sentencing consequences of his plea provided a "fair and just reason" for withdrawal, especially since both the plea agreement and the district court made it abundantly

clear to Nieves that he could be sentenced in a manner that would not accord with the terms of the agreement.

Accordingly, the district court did not abuse its discretion in denying Nieves's motion to withdraw his guilty plea.

**B.**

Nieves also asserts that the district court erred in adopting the PSR's drug-quantity calculation. He claims that "the record does not support [a] factual basis" for attributing the apartment-wide amount of drugs to him as "relevant conduct" under U.S.S.G. §1B1.3.[5]

Under U.S.S.G. §1B1.3, "[i]f the sentencing court finds by a preponderance of the evidence that a defendant engaged in the 'same course of conduct or common scheme or plan' involving additional drugs, it can attribute the amount of those drugs involved to the defendant." United States v. McDonald, 804 F.3d 497, 502-503 (1st Cir. 2015) (internal citations omitted) (quoting U.S.S.G. §1B1.3(a)(2)). A district court's finding under this provision is "'entitled to considerable deference,' and '[a]bsent mistake of law, we review such conclusions only for clear error.'" Id. at 503 (alteration in original) (quoting United States v. Wood, 924 F.2d 399, 403 (1st Cir. 1991)).

---

[5] To be sure, Nieves does not argue that the district court erred by failing to make a particularized finding regarding the drug amount attributable to him as relevant conduct; rather, he argues only that the record does not support such a finding.

Here, the district court explicitly stated that "if you take all the controlled substances that were found [in the apartment] and convert them into marijuana . . . even though they are not charged, they are considered relevant conduct." Relying in part on a Guidelines application note for §1B1.3, Nieves counters that there was no support in the record for a finding of relevant conduct because there was no evidence that he "knew there were other drugs in the apartment," "joined others to distribute drugs," "pooled resources or profits with the other charged defendants," or even knew the other defendants prior to their arrest.

But Nieves forfeited this argument. As noted above, Nieves argued in his sentencing memorandum and in his formal objection to the PSR that the district court was not obligated to factor in the apartment-wide quantity in calculating his Sentencing Guidelines range. But "a litigant has an obligation to spell out its arguments squarely and distinctly" before the district court, United States v. Diggins, 36 F.4th 302, 319 (1st Cir. 2022) (quoting Zannino, 895 F.2d at 17), and a claim of error must be "sufficiently specific to call the district court's attention to the asserted error," United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). Relevantly to Nieves's case, "arguments cannot be interchanged at will" on appeal. United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011) (citing to

United States v. Lilly, 13 F.3d 15, 17-18 & n.6 (1st Cir. 1994)). We do not agree that this argument sufficiently called the court's attention to ostensible error in applying §1B1.3 to his case. This conclusion is underscored by the fact that the Probation Office explicitly invoked §1B1.3 in responding to Nieves's objections to the PSR, yet at no point thereafter did Nieves challenge this stated rationale. Furthermore, while we recognize that Nieves argued during his sentencing hearing that the quantity specified in the PSR was factually incorrect, he does not argue on appeal that anything he said at his sentencing hearing preserved a relevant conduct-based objection.

We subject unpreserved claims of error to plain error review. Under this exacting standard, Nieves must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Merced-García, 24 F.4th 76, 79-80 (1st Cir. 2022) (alteration in original) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

We find, in turn, that the district court committed no clear or obvious error in attributing the apartment-wide drug amount to Nieves. It is true that -- as discussed above -- Nieves consistently stated that he was only a temporary visitor to the apartment. But he overlooks the fact that there was ample,

- 19 -

unobjected-to evidence in the record linking him to drug trafficking activity. This evidence includes the ammunition, plastic bags, vials, and weight scales located in the room in which police found Nieves, and similar items that were found throughout the apartment. Our precedent suggests that these items are indicative of trafficking activity. Cf. United States v. Marin, 523 F.3d 24, 28 (1st Cir. 2008) (noting that a weapon, ammunition, drugs, paraphernalia, and cash all being stored in the same house was indicative of a weapon being used in furtherance of drug-trafficking activity). Furthermore, it is difficult to credit Nieves's argument when each of the infirmities that he specifies with respect to the PSR drug quantity would hypothetically apply with equal force to the 87.23 grams specified in the plea agreement. Yet Nieves does not challenge the factual basis for the 87.23 grams to which he pleaded guilty, and -- on the contrary -- affirmatively urged the district court to adopt this amount.

Fundamentally, the district court had to weigh the seized evidence against Nieves's proffered motive for being in the apartment in deciding whether to attribute the larger amount of drugs to him. The mere fact that the sum total of the evidence yielded conflicting signals does not suffice to illustrate clear or obvious error, especially when Nieves did not object to the PSR's description of the objects found in the room in which he was

located.  Cf. United States v. Takesian, 945 F.3d 553, 563 (1st Cir. 2019) (noting that, on plain error review, "if an error pressed by the appellant turns on 'a factual finding [he] neglected to ask the district court to make, the error cannot be clear or obvious unless' he shows that 'the desired factual finding is the only one rationally supported by the record below'" (alterations in original) (quoting United States v. Olivier-Diaz, 13 F.3d 1, 5 (1st Cir. 1993))).  We therefore find that the district court did not commit plain error in attributing the apartment-wide quantity of drugs to Nieves.

**Affirmed**.