# United States Court of Appeals
## For the First Circuit

No. 22-1925

UNITED STATES OF AMERICA,

Appellee,

v.

ANLERT PEREZ-SEGURA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Montecalvo, Circuit Judges.

Antonio L. Bisbal Bultrón on brief for appellant.

W. Stephen Muldrow, United States Attorney, Ricardo A.
Imbert-Fernández, Assistant United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, on brief for
appellee.

January 28, 2025

**GELPÍ, Circuit Judge**.  Appellant Anlert Perez-Segura ("Perez-Segura")[1] pled guilty to conspiring to import cocaine into the United States.  In exchange for a specific term of imprisonment, he waived his right to appeal any aspect of his conviction and sentence.  He seeks to bypass said waiver and appeal directly on two grounds.  Neither persuades us.  We thus dismiss his appeal.

## I. BACKGROUND

Because Perez-Segura's "appeal follows a guilty plea, we draw the relevant facts from the plea agreement, the undisputed portions of the change-of-plea colloquy, the presentence investigation report[], and the sentencing record." United States v. Diaz-Serrano, 77 F.4th 41, 44 (1st Cir. 2023).

On January 23, 2022, United States Customs and Border Protection officers caught Perez-Segura captaining a boat carrying cocaine off of Puerto Rico's western coast.  A grand jury indicted Perez-Segura and his shipmates on four counts on February 2, 2022.  He entered into a plea agreement under which he agreed to plead guilty to Count One -- conspiracy to import cocaine into the United States, 21 U.S.C. §§ 952(a), 960(a)(1) & (b)(1)(B)(ii), and 963 -- in exchange for the government's agreement to drop the

---

[1] We refer to Appellant as "Perez-Segura" without a Spanish accent or tilde because that is how he spelled his name in his opening and reply briefs.  See United States v. Rosa-Borges, 101 F.4th 66, 68 n.1 (1st Cir. 2024).

remaining counts and advocate for a sentence of 120 months' imprisonment, the applicable mandatory minimum. He also waived his right to appeal "any aspect of th[e] case's judgment and sentence" if his sentence was "120 months or less."

The plea agreement included a supplement. Perez-Segura and the government acknowledged in the supplement that the district court could impose a sentence below the 120-month mandatory minimum they agreed to if he qualified for the "safety valve" under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Pertinent to this appeal is the safety valve's fifth[2] prerequisite: that "not later than

---

[2] The other four prerequisites are:

> (1) the defendant does not have (A) more than 4 criminal history points . . . ; (B) a prior 3-point offense . . . ; and (C) a prior 2-point violent offense . . . ;

> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

> (3) the offense did not result in death or serious bodily injury to any person; [and]

> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act[.]

18 U.S.C. § 3553(f)(1)-(4). The record on appeal indicates that Perez-Segura did not have any criminal history, use violence in the offense, harm another in the offense, or act as a supervisor

- 3 -

the time of the sentencing hearing, the defendant has truthfully provided to the [g]overnment all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). Per the supplement, if Perez-Segura qualified, the mandatory minimum sentence would not apply, his total offense level would drop to twenty-nine, and his sentencing range would be 87-108 months' imprisonment. The parties, as per the plea agreement, would "jointly recommend a sentence of [eighty-seven] months of imprisonment."

The district court held a change-of-plea hearing on August 25, 2022. At the hearing, the district court first found that Perez-Segura was competent to plead guilty, confirmed that he was satisfied with his counsel, and ensured that he understood the consequences of and what constitutional rights he gave up by pleading guilty. Next, the government summarized the plea agreement, explained the waiver of appeal, and mentioned the supplement to the agreement. So, the district court, in going over the plea agreement with Perez-Segura, confirmed that he understood that he waived his right to appeal his sentence and conviction and that, only if the safety valve applied, could he be sentenced to a term of imprisonment less than 120 months. The

---

in the offense. Furthermore, Count One is a safety-valve-eligible offense. See id. § 3553(f).

district court then ensured that Perez-Segura understood the nature of the offense to which he pled guilty and the court's authority in sentencing. Finally, the government recited the facts underlying Count One, the district court asked Perez-Segura if he agreed with what the government claimed it could prove were the case to go to trial, and Perez-Segura agreed. After finding his plea to be "knowing and voluntary" and "supported by an independent basis in fact" as to the essential elements, the district court accepted his guilty plea.

On November 16, 2022, the district court convened a sentencing hearing. After Perez-Segura's trial counsel and the government advocated for a 120-month term of imprisonment, both approached the bench for a sidebar conference. The district court asked, "Did [Perez-Segura] do a valve?" Perez-Segura's trial counsel said, "He didn't do it, Your Honor" and then claimed that he was "very difficult." Counsel elaborated further:

> We went to do the safety valve, Your Honor. And his issue was he was angry, and he was, like, fighting because he says that I told him that the only thing he had to tell the agents was the place where he left to come to Puerto Rico, which is false.

She explained that Perez-Segura was frustrated because he believed that a co-defendant received only thirty-six months' imprisonment, which she dismissed as incorrect. The government agreed, describing Perez-Segura as "difficult."

The district court thereafter sentenced Perez-Segura to 120 months' imprisonment -- the mandatory minimum, which all parties agreed to without objection -- and dismissed the remaining counts. This timely appeal followed.

## II. DISCUSSION

Perez-Segura raises two principal claims on appeal. First, he argues that the district court erred in not further inquiring into his eligibility for the safety valve, noting that the district court should have held an evidentiary hearing into the issue. Second, he contends that his trial counsel was constitutionally ineffective for failing to advocate for the safety valve or request an evidentiary hearing on the matter. We consider each issue in turn.

### A. Waiver of Appeal

"[A] knowing and voluntary waiver of appellate rights is presumptively enforceable" and applies where the "claim of error falls within the scope of the waiver." United States v. Staveley, 43 F.4th 9, 13 (1st Cir. 2022) (citation omitted). Perez-Segura's safety-valve appeal runs headlong, as he recognizes, into his plea agreement's appellate waiver. He agrees that he knowingly, voluntarily, and intelligently waived his right to appeal any issue concerning his "term of imprisonment" because he was sentenced to 120 months' imprisonment. To get around this, however, he contends

that enforcing his bargained-for appellate waiver against his safety-valve arguments would work a miscarriage of justice.

A party seeking to "[t]rigger[] the miscarriage of justice exception" to an otherwise valid appellate waiver must show, "at a bare minimum, an increment of error more glaring than routine reversible error." United States v. Nguyen, 618 F.3d 72, 75 (1st Cir. 2010); see also Staveley, 43 F.4th at 18. This "is a fact-specific inquiry," which considers "the clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Staveley, 43 F.4th at 18 (alteration in original) (quoting United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)). But, above all else, an appellant must demonstrate a clear "error of significant or constitutional dimension." Id. (quoting United States v. Del Valle-Cruz, 785 F.3d 48, 56 (1st Cir. 2015)).

Perez-Segura fails to meet this exacting standard. His brief on appeal merely states that there was "apparent harm done" and that the district court "committed a miscarriage of justice" when it sentenced him after he was "denied the benefit of the safety valve without an evidentiary hearing." These undeveloped arguments leave us with too much guesswork, so we deem them waived. See United States v. Candelario-Ramos, 45 F.4th 521, 524 (1st Cir. 2022) (finding an argument that a defendant's claim raised a

"serious constitutional challenge" and "serious questions related to disparity in sentencing" waived where it did not explain "why the seriousness of either his constitutional or disparity claim create[d] a miscarriage of justice"); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Were we to overlook this waiver, our search for a miscarriage of justice would nonetheless be fruitless. Perez-Segura did not request an evidentiary hearing on the safety valve below, and this "largely disposes of his claim" that the district court's failure to hold such a hearing was erroneous. See United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996); United States v. Martínez, 88 F. App'x 425, 427 (1st Cir. 2004) (per curiam). Just as appellants cannot raise issues on appeal that they did not develop in the district court, Perez-Segura cannot fault the district court for not holding an evidentiary hearing where he "did not seasonably request such a hearing." United States v. Gertner, 65 F.3d 963, 970 (1st Cir. 1995) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1120 (1st Cir. 1989)). Nor can he fault the district court for failing to inquire further into the safety valve. It was his burden to persuade the district court that it applied, United States v. Flanagan, 80 F.3d 143,

- 8 -

146-47 (1st Cir. 1996), and his defense counsel "made no attempt to satisfy that burden" below, United States v. Peña-Hernández, 146 F. App'x 499, 501 (1st Cir. 2005) (per curiam). Holding him to his plea agreement is not a miscarriage of justice where he met neither burden.

At worst, Perez-Segura waived his argument on the safety valve. At best, he does not show a miscarriage of justice. We thus dismiss his appeal concerning this issue.[3]

## B. Ineffective Assistance

Perez-Segura's ineffective assistance claim remains. The government does not seek to rely upon the appellate waiver for this claim. We thus proceed to this claim notwithstanding the plea agreement. See, e.g., United States v. Carrasco-De-Jesús, 589 F.3d 22, 26 (1st Cir. 2009). To prevail, Perez-Segura must meet a "heavy burden" and show that (1) "his 'counsel's representation fell below an objective standard of reasonableness'" and (2) "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Casey v. United States,

---

[3] Our ruling on his safety-valve arguments moots his request that we hold the appeal in abeyance while the district court conducts an evidentiary hearing premised on the safety valve.

100 F.4th 34, 42 (1st Cir. 2024) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).

We hold "with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993); see United States v. Akoto, 61 F.4th 36, 41 (1st Cir. 2023); United States v. Padilla-Galarza, 990 F.3d 60, 93 (1st Cir. 2021). That stems from the district court's "superior vantage from which" it is well-suited to be the first to measure "the quality of the legal representation afforded to the defendant . . . and the impact of any shortfall in that representation." Staveley, 43 F.4th at 15 (quoting Padilla-Galarza, 990 F.3d at 93-94). A defendant advancing a "newly minted" ineffective assistance claim therefore ordinarily must resort to collateral proceedings, pursuant to 28 U.S.C. § 2255, in the district court. Padilla-Galarza, 990 F.3d at 94.

Like most rules, there is an exception. If "the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim," we may "determine the merits of such a contention on direct appeal." United States v. Buoi, 84 F.4th 31, 41 (1st Cir. 2023) (quoting United States v. Natanel, 938 F.2d

- 10 -

302, 309 (1st Cir. 1991)). "But this exception 'is narrow[.]'" Staveley, 43 F.4th at 16 (quoting Padilla-Galarza, 990 F.3d at 94). Our cases reflect that the "critical facts" are those in the record that show us why counsel acted as they did and permit us to ascertain whether the error was prejudicial. Compare United States v. Ortiz, 146 F.3d 25, 27-28 (1st Cir. 1998) (invoking exception to review an ineffective assistance claim surrounding an attorney's failure to file a motion to suppress where the record showed that the attorney did not file the motion because it was frivolous, and accordingly concluding that the attorney's performance was reasonable), with Buoi, 84 F.4th at 41 (refusing to consider ineffective assistance claim because the record did not establish why defense counsel made the allegedly ineffective decisions). Without this information, we cannot ascertain whether counsel acted as the Sixth Amendment requires. See, e.g., Massaro v. United States, 538 U.S. 500, 505 (2003).

Respect for the lower court also guides our presumptive refusal to entertain an ineffective assistance motion on direct appeal. The district court that "presided" below "is in the best position to evaluate the quality of representation" in the first instance because of its familiarity with the parties, counsel, and travel of the case. United States v. Hoyos-Medina, 878 F.2d 21, 22 (1st Cir. 1989); see, e.g., United States v. Moran, 393 F.3d 1, 10 (1st Cir. 2004). It is often helpful for us to have the district

- 11 -

court's views on issues that rely upon the facts, and ineffective assistance claims -- fact-bound as they tend to be -- are no exception. See United States v. Carrasquillo-Carmona, 339 F. App'x 1, 2-3 (1st Cir. 2009) (describing the "district court's views" about whether a piece of evidence affected the analysis of the voluntariness of a confession as "essential to a reasoned determination of" prejudice under Strickland); United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).

Here, Perez-Segura's ineffective assistance claim is better suited for a collateral proceeding. As he did under his other claims, he makes conclusory assertions that his counsel was ineffective because she did not ask the district court to apply the safety valve. His brief recites legal standards on a myriad of issues, but fails to explain their relevance, and states without a cogent explanation that his defense counsel was "deficient" for not pursuing the issue. Putting aside any uncertainty in the record, his perfunctory arguments give us little guidance for the "reasoned consideration" we must undertake if we are to invoke the exception. Buoi, 84 F.4th at 41 (quoting Natanel, 938 F.2d at 309); see United States v. Nieves-Meléndez, 58 F.4th 569, 575 n.3 (1st Cir. 2023) (refusing to address the defendant's ineffective assistance claim on direct appeal where he "only made a cursory attempt to address the issue").

It is his job, not ours, to "create the ossature for [his] argument, and put flesh on its bones." Zannino, 895 F.2d at 17. That principle holds great weight in this context. We prefer that ineffective assistance claims develop in a collateral proceeding so that the district court can develop a record documenting why the trial counsel made the decisions in question, how these decisions were allegedly deficient, and if those deficiencies were prejudicial. See, e.g., Massaro, 538 U.S. at 504-06; Mala, 7 F.3d at 1063. Perez-Segura's perfunctory arguments only tantalize our desire for something more to work with.

Furthermore, "critical facts" remain in dispute. At the sentencing hearing, Perez-Segura's trial counsel explained that Perez-Segura did not qualify for the safety valve because he refused to cooperate out of frustration. But he disputes this characterization. He claims here that his trial counsel was constitutionally ineffective because she did not "raise the fact that [he] did comply with the requirements of the safety valve" and implies throughout his briefing here that he did so comply. The extent of his compliance could matter. If the district court found "at sentencing that [all] five conditions ha[d] been met," then it was "require[d] . . . to disregard the statutory mandatory minimum," and the supplement to the plea agreement contemplated this possibility. Montanez, 82 F.3d at 521. With the facts of

his compliance still in dispute, it is difficult to resolve the issue at this early stage.

In deciding whether to bypass our collateral-challenge requirement, we must be mindful that both sides often have little opportunity to develop the record on the alleged ineffectiveness below. See Massaro, 538 U.S. at 504-05; cf. Brien v. United States, 695 F.2d 10, 13 (1st Cir. 1982) (recognizing that permitting the deposition of the attorney accused of being ineffective "was essential" to resolving an ineffective assistance claim). And here, beyond trial counsel's brief statement that Perez-Segura refused to comply out of anger, the record does not contain more detail on this point, such as the circumstances of Perez-Segura and his counsel's attempted meeting with the government and what information -- if any -- Perez-Segura had or attempted to share.

Accordingly, we dismiss Perez-Segura's ineffective assistance claim without prejudice.[4] See, e.g., United States v.

---

[4] To the extent Perez-Segura requests that we, in lieu of dismissing without prejudice, remand for an evidentiary hearing on his ineffective assistance claim, his conclusory arguments and failure to request an evidentiary hearing below doom this request. See United States v. Isom, 85 F.3d 831, 837-38 (1st Cir. 1996). If Perez-Segura brings his ineffective assistance claim in a collateral hearing, it will fall to the district court to decide in the first instance whether his claim requires an evidentiary hearing. Cf. United States v. Torres-Rivera, 874 F.3d 40, 45 (1st Cir. 2017) (noting that § 2255 petitioners are not "entitled to an evidentiary hearing as a matter of right" (quoting Ramos-Martínez v. United States, 638 F.3d 315, 326 (1st Cir. 2011))).

Fernández-Santos, 856 F.3d 10, 17-18 (1st Cir. 2017) (declining to hear ineffective assistance claim on direct appeal where the defendant made "only skeletal arguments," the record was not developed on the issue, and he neither raised his arguments below nor pointed to record support on appeal for his claim).

### III. CONCLUSION

We **dismiss** the appeal.  Our dismissal is **without prejudice** only as to Perez-Segura's right to raise his ineffective assistance claim in a collateral proceeding.