# United States Court of Appeals
## For the First Circuit

No. 09-2287

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT DONATH,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock. Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

William Maselli was on brief for appellant.
Margaret D. McGaughey, Appellate Chief, and Paula D. Silsby,
United States Attorney, were on brief for appellee.

August 17, 2010

**LYNCH**, **Chief Judge**.  In November 2008, Robert Donath agreed to plead guilty to three counts charging his participation in a conspiracy to distribute cocaine and other drugs in the small town of Lincoln, Maine.  As part of his plea agreement, Donath expressly waived his right to appeal his plea or sentence if it did not exceed 120 months.  The district court accepted Donath's plea and sentenced him to a below-guidelines term of 90 months' imprisonment.

Nonetheless, Donath appeals, urging that his appeals waiver is unenforceable and that the district court erred when calculating his sentence by mischaracterizing his prior crimes.  He says that error constituted a miscarriage of justice, which excuses his waiver of appeal.  We find the waiver enforceable and dismiss the appeal.

## I.

Donath was indicted in September 2008 with fifteen other suspected participants in the drug conspiracy.  The indictment charged Donath in three counts, alleging (1) conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, 50 grams or more of cocaine base, and an unspecified quantity of oxycodone; (2) conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and 5 grams or more of cocaine base; and (3) a separate conspiracy to distribute and possess with intent to distribute 500 grams or

more of cocaine and 5 grams or more of cocaine base; all in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Two months later, in early November 2008, Donath reached an agreement with federal prosecutors to plead guilty to all counts against him. Donath's written plea agreement described the charges and the penalties he faced. As detailed in the agreement, conviction on Count 1 carried a mandatory minimum of ten years' imprisonment with a maximum sentence of life in prison; conviction on Counts 2 and 3 meant a mandatory minimum of five years' imprisonment with a maximum sentence of forty years in prison. The agreement also specified fines, special assessments, and supervised release terms associated with the charges.

In exchange for Donath's guilty plea and further cooperation, the government agreed to recommend that the court give Donath a three-level offense-level reduction for acceptance of responsibility, pursuant to U.S.S.G. section 3E1.1.

The plea agreement included an explicit waiver of Donath's right to appeal his plea or sentence, which read, in relevant part,

> Appeal Waivers. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal the following:
>
>> A. Defendant's guilty plea and any other aspect of Defendant's conviction in the above-captioned case; and

> B. A sentence of imprisonment that does not exceed 120 months.
>
> . . . .
>
> The number of months mentioned in this paragraph does not necessarily constitute an estimate of the sentence that the parties expect will be imposed.

The agreement was not conditioned on, and in fact did not mention, the issue of Donath's eligibility for 18 U.S.C. § 3553(f)'s "safety valve" adjustment. Under that provision, a court may give defendants who meet certain conditions, among them that they "not have more than 1 criminal history point," a reduction from an otherwise mandatory minimum sentence.[1] Id. § 3553(f)(1).

Donath signed the agreement on November 5, 2008, as did his counsel, who affirmed that, to his knowledge, "Donath's decision to enter into this Agreement [wa]s an informed and voluntary one."

As part of this agreement, which was put on the public docket, Donath also signed a supplemental agreement, which provided him with letter immunity in exchange for his "full and truthful cooperation." This agreement was put under seal, presumably to protect Donath. The supplemental agreement expressly incorporated

---

[1] The "other conditions are that the defendant not use violence or possess a weapon, that the offense not result in death or serious injury, that the defendant not organize the offense or engage in a continuing criminal enterprise, and that the defendant cooperate with the government." United States v. Maldonado, No. 09-1626, 2010 WL 2898250, at *1 n.1 (1st Cir. July 26, 2010) (citing 18 U.S.C. § 3553(f)(2)-(5)).

the terms of the publicly filed agreement.  The government further agreed to "make known [Donath's] cooperation" upon Donath's request but did not commit the government to seeking a safety-valve reduction.  Donath thus knew that if the court at sentencing assigned him more than one criminal-history point he would be ineligible for safety-valve relief.  He also knew that there was no agreement on this and that he had waived his right to appeal any sentence the court would impose of 120 months or fewer.

On February 25, 2009, Donath pled guilty in the district court.  During Donath's plea colloquy, he confirmed that he understood the terms and conditions of his plea agreement and that the agreement was not binding on the court as to sentencing guidelines calculations.  The district court explicitly detailed the consequences of Donath's plea waiver, noting that although Donath ordinarily would have the right to appeal,

> you're agreeing here not to take any appeal of your guilty plea and conviction, and you're also agreeing that you won't appeal your sentence as long as it's not more than 120 months or ten years. In other words, if I sentence you at 120 months or less, I'm the last judge in your case and you're agreeing that you'll not be able to overturn what I do.

When the court asked Donath if he understood the waiver, Donath responded that he did.  After further colloquy on other issues, the court accepted Donath's guilty plea.

Donath appeared for sentencing on September 8, 2009.  At the outset of the proceedings, the district court noted that the

-5-

sole disputed issue was the presentence report's ("PSR") assignment of three criminal-history points to Donath, which precluded his eligibility for safety-valve relief.  See 18 U.S.C. § 3553(f)(1).  Donath's objection to the PSR focused on its assignment of two criminal-history points for misdemeanor "Criminal Mischief" convictions in December 1998 and April 2001.[2]  The first of these convictions was for breaking a window.  The second was for "recklessly damag[ing] and destroy[ing] tires and property."  In both cases, Donath represented himself in Maine district court; the state court assessed him a $150 fine for the first conviction and a $150 fine and $365 in restitution for the second.

Donath argued that these convictions were minor offenses, which, under section 4A1.2(c)(1) of the guidelines, should not yield criminal-history points.  Although misdemeanor convictions are generally counted in defendants' criminal histories, section 4A1.2(c) provides an exception when (1) the sentence for the past conviction was less than one year's probation or thirty days' imprisonment and (2) the past offense is one of or is "similar to" certain offenses listed in the guideline.  U.S.S.G. § 4A1.2(c)(1); see also United States v. Matos, No. 09-1178, 2010 WL 2674483, at

---

[2]    Because the PSR's assignment of a third criminal-history point for a 2009 Maine conviction for "Obstruction of Government Administration" would not affect Donath's eligibility for safety-valve relief if both the criminal mischief convictions were counted, see 18 U.S.C. § 3553(f)(1), the district court found "it unnecessary to resolve that issue."

*7 (1st Cir. July 7, 2010).  Donath claimed that his criminal mischief convictions were similar to the listed offense of "disorderly conduct or disturbing the peace."

The district court rejected Donath's argument that he should not receive criminal-history points for these prior convictions.  The district court considered United States v. May, 343 F.3d 1 (1st Cir. 2003), which compared criminal mischief and disorderly conduct under Maine law and held that statutory differences, as well as May's offense conduct, rendered the offenses dissimilar for purposes of section 4A1.2(c)(1).  Id. at 10.  The district court explained that May's analysis of Maine law, as well as "the underlying conduct here"--particularly the fact that Donath, like May, had destroyed his victims' property-- distinguished Donath's criminal mischief offenses from disorderly conduct.

Accordingly, the court found that Donath was ineligible for safety-valve relief.  The ten-year mandatory minimum made his guidelines range 120 to 121 months' imprisonment.  Had the criminal mischief misdemeanors not been counted toward his criminal-history points and the safety valve been applied, the bottom of Donath's guideline sentencing range would have been considerably lower.

As it had agreed, the government recommended a sentence reduction based on Donath's acceptance of responsibility.  The government also cited Donath's extensive cooperation with

authorities as a basis for downward departure, see U.S.S.G. § 5K1.1, for a total recommended reduction of 24 months.  The court accepted the government's recommendation but granted a larger, 30-month departure from Donath's minimum guidelines sentence and sentenced him to concurrent 90-month sentences on each of the three counts of conviction.  At no time did Donath seek to withdraw his plea in the district court.

## II.

Donath makes two related arguments on appeal: that his appeals waiver should not be enforced and that, reaching the underlying issue if his waiver is set aside, the district court erred by assigning him criminal-history points for his criminal mischief convictions.  We find Donath's waiver enforceable and do not reach the merits of his second claim.

Our assessment of enforceability of a waiver of criminal appeal generally involves "a step-by-step determination of the nature and circumstances of the waiver" to ensure "that the defendant's entry into the waiver was knowing and voluntary; that the sentencing court adequately explained its import; that the putative appeal came within the scope of the waiver; and that enforcement of the waiver . . . would not work a miscarriage of justice."  United States v. Calderón-Pacheco, 564 F.3d 55, 58 (1st Cir. 2009) (citing United States v. Teeter, 257 F.3d 14, 23-24 (1st

Cir. 2001)); see also United States v. Cardona-Díaz, 524 F.3d 20, 22 (1st Cir. 2008).

Donath does not take issue with the first three factors. Donath knowingly and voluntarily waived his right to this appeal, the district court adequately explained the consequences of his waiver, and this putative appeal falls within the scope of the waiver. His claim instead turns on his argument that the sentencing court "felt unnecessarily bound" by May and that, under these circumstances, enforcing the plea agreement would constitute a miscarriage of justice. This argument is meritless.

The miscarriage-of-justice exception is "applied sparingly and without undue generosity" and is reserved for "egregious cases." Teeter, 257 F.3d at 25-26; see also United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008); Cardona-Díaz, 524 F.3d at 22. That Donath may have a different reading of the May decision than the district court's straightforward analysis of the case and its bearing on Donath's past offenses is not even arguably within the category of miscarriage-of-justice claims. We discourage such attempts to turn garden-variety disputes into miscarriage-of-justice claims. That ends the matter; however, we make an additional point that appeals such as this should not be brought.

When enforcing the appellate waiver, we stress that both sides are obligated to live by the bargain they made. Donath

entered his plea and waived his right to appeal knowing that his eligibility for safety-valve relief remained uncertain. His plea agreement did not reserve the ability to appeal the issue of his eligibility for the safety-valve determination. Had Donath wanted to condition his plea on safety-valve eligibility, he could have bargained for that right. Cf. United States v. Santiago, 229 F.3d 313, 315 (1st Cir. 2000). If he wanted to first know how his PSR would treat his past convictions, he could have requested that the PSR be prepared before he signed the plea agreement. Cf. United States v. Maldonado, No. 09-1626, 2010 WL 2898250, at *1 (1st Cir. July 26, 2010). Donath chose to do neither.

Here, the government more than satisfied its end of the agreement. As pledged, the government both recommended a substantial reduction in Donath's sentence for his acceptance of responsibility and notified the court that Donath had cooperated with authorities. Moreover, although it had not agreed to do so, the government urged the court to reduce Donath's sentence for his cooperation. The district court accepted the government's recommendation and granted a yet-larger sentencing departure. Donath has received the benefit of his bargain.

III.

For these reasons, defendant's appeal is dismissed.

So ordered.

-10-