# United States Court of Appeals
## For the First Circuit

No. 21-1796

UNITED STATES OF AMERICA,

Appellee,

v.

QUINTON SPINKS, a/k/a Travis, a/k/a Trav, a/k/a Q,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Kayatta, Gelpí, and Montecalvo,
Circuit Judges.

Eamonn R. C. Hart, with whom BRANN & ISAACSON was on brief, for appellant.

Lindsay B. Feinberg, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

March 23, 2023

**MONTECALVO, <u>Circuit Judge</u>.** Quinton Spinks ("Spinks") appeals a 115-month sentence imposed by the district court upon his guilty plea to one count of conspiracy to distribute and possess with intent to distribute cocaine base and heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Spinks asserts that he may challenge the procedural reasonableness of the sentence, despite an appellate waiver in his plea agreement, because the waiver does not apply. After careful review, we find the appellate waiver applies, barring Spinks's challenge to his sentence. Accordingly, we dismiss his appeal.

## I. Background

Because this sentencing appeal follows a guilty plea, "we glean the [following] relevant facts from the plea agreement, the undisputed sections of the presentence investigation report [], and the transcripts of [the] change-of-plea and sentencing hearings." <u>United States</u> v. <u>Ubiles-Rosario</u>, 867 F.3d 277, 280 n.2 (1st Cir. 2017).

Between approximately November 2016 and September 2017, Spinks was involved in a conspiracy to distribute cocaine base and heroin throughout central Maine. The conspiracy involved Spinks and his co-conspirators travelling to Rochester, New York, to pick up drugs and transporting them to central Maine for distribution. In January 2017, as this conspiracy was occurring, Spinks sold two bags of crack cocaine to an undercover law enforcement officer in

Batavia, New York, and was subsequently arrested and convicted in state court. Then, in July 2018, Spinks was arrested on the federal charges at issue in this case. In July 2019, following an indictment, Spinks pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine base and heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). As part of Spinks's plea agreement, he agreed to the following in a section titled "Appeal Waivers":

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal the following:
>
> A. Defendant's guilty plea and any other aspect of Defendant's conviction in the above-captioned case; and
>
> B. A sentence of imprisonment that does not exceed 125 months.
>
> Defendant's waiver of his right to appeal shall not apply to appeals based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

At the change-of-plea hearing, the district court explained the rights that Spinks was waiving by pleading guilty and inquired into Spinks's understanding of the plea agreement and the consequences of his plea:

> THE COURT: In light of all that I've just explained to you, all the rights that you have that you're waiving or giving up by pleading guilty, do you still choose to plead guilty to

the charge contained in Count 1 of the indictment?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: The [plea agreement] has your signature on it or what purports to be your signature on it.  Do you see your signature on the paperwork?

THE DEFENDANT: Yes, sir.

THE COURT: Is that your signature?

THE DEFENDANT: Yes, sir.

THE COURT: Did you read the [plea agreement] before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have a chance to consult with [your counsel] about the significance of the [plea agreement] before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: Did you understand what you were signing?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: In signing the [plea agreement], did you intend to agree to all its terms and conditions?

THE DEFENDANT: Yes.

The district court then called attention to the waiver provisions, asking:

THE COURT: Now, you may recall that a little while ago, I told you your right to appeal your conviction was going to be limited because you were pleading guilty. Do you remember that?

THE DEFENDANT: Yes, sir.

THE COURT: However, under the terms of this agreement, and, again, these agreements are usually upheld as a matter of law, you are waiving or giving up any right to challenge the legality of your guilty plea and your conviction in a higher court. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: This goes on to say that you waive the right to appeal a sentence of imprisonment that does not exceed 125 months.

Now, unlike your right to appeal your conviction, you would have, but for the terms of this agreement, a right to appeal any sentence that I imposed. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: However, under the terms of this agreement, and, again, these agreements are usually upheld as a matter of law, if I impose a sentence of 125 months or less, you will have no right to appeal that sentence to a higher court. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: That means, for all intents and purposes, if I impose a sentence of 125 months or less, I will be the only judge to review the legality of that sentence. Do you understand?

THE DEFENDANT: Yes, sir.

Ahead of sentencing, the Probation Office prepared the presentence investigation report ("PSR"), which stated that Spinks's base offense level was thirty and that Spinks was subject to a two-level dangerous weapon enhancement, a two-level criminal livelihood enhancement, a four-level "organizer or leader" enhancement, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of thirty-five. The PSR treated Spinks's 2017 New York state court conviction not as relevant conduct but as a discrete sale separate from the conspiracy at issue in this case. Consequently, Spinks's criminal history score added up to eleven, resulting in a criminal history category of five. As a result, the PSR calculated Spinks's guidelines sentencing range as 262 to 327 months, which was then capped at the statutorily authorized maximum term of imprisonment of 240 months.

Spinks objected to the PSR's guidelines sentencing range calculation, challenging the determinations on the applicable base offense level and criminal history score. At sentencing, the district court addressed Spinks's objections. The court concluded that a base offense level of twenty-four applied. The district court also held that Spinks was subject to a two-level dangerous weapon enhancement, a three-level "supervisor or manager" enhancement, and a three-level reduction for acceptance of

responsibility, resulting in a total offense level of twenty-six, which was nine levels lower than the PSR recommended.

As to Spinks's objection to the criminal history category calculation, he argued that his 2017 conviction for the sale of crack cocaine in Batavia, New York, should be considered relevant conduct for this case rather than as a separate conviction. Spinks explained that a relevant conduct determination would put him into a lower criminal history category and thus lower his guidelines sentencing range. The district court overruled the objection and, after considering a government concession, placed Spinks in criminal history category four, one category level lower than the PSR recommended.

Subsequently, the district court calculated the guidelines sentencing range as 92 to 115 months, as opposed to the range of 78 to 97 months that Spinks argued for with his objection, and imposed a sentence of 115-months imprisonment. Spinks then timely filed this appeal.

## II. Discussion

On appeal, Spinks contends that, as a threshold issue, his appellate waiver does not apply because the plea agreement's language does not bar a procedural reasonableness challenge. As a result, Spinks maintains that he is permitted to bring this appeal arguing that the district court erred in rejecting his

objection characterizing the 2017 New York state court conviction as relevant conduct.

In the alternative, Spinks claims that even if the appellate waiver's language does bar this appeal, he was not informed of that fact and thus did not enter the appeal waiver knowingly. Spinks contends that enforcing an inadequately explained appellate waiver would be a miscarriage of justice.

We begin with the initial question of whether Spinks's appeal is barred by the language of the waiver contained in his plea agreement.

## A. The Plea Agreement's Language

Spinks's primary argument is not that the appellate waiver is invalid, but rather that its language is limited in scope and does not cover this appeal. We review the language of the waiver and "rely on basic contract interpretation principles, construing the agreement where possible to give effect to every term and phrase, and construing any ambiguities in favor of allowing the appeal to proceed[.]" United States v. Santiago-Burgos, 750 F.3d 19, 23 (1st Cir. 2014) (internal citations omitted). In doing so, we must carefully consider the scope of the waiver because "[e]ven a knowing and voluntary appeal waiver only precludes appeals that fall within its scope." United States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007).

The plea agreement states that "Defendant waives the right to appeal . . . [a] sentence of imprisonment that does not exceed 125 months."  Spinks focuses on the phrase "a sentence of imprisonment" and argues that waiving an appeal to "a sentence" does not bar a procedural reasonableness challenge.  He claims that the government would have included a waiver to "the manner in which the sentence was determined" if the appellate waiver was meant to bar an appeal challenging the guidelines sentencing range calculation.  He points to the omission of this language as evidence that this appeal does not fall within the appellate waiver's limited scope.  Spinks maintains that while the language used in the waiver here, referring to "a sentence," may prevent him from bringing a substantive reasonableness challenge to the sentence length itself, it does not prevent him from appealing the district court's decisions made in calculating that sentence length.

This argument is unavailing.  Appellate review of a sentence "involves a two-step pavane."  United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019).  First, we examine "any claims of procedural error.  If the sentence passes procedural muster, we then examine any challenge to its substantive reasonableness."  Id. (internal citation omitted).  It should therefore be clear that waiving appellate review of "a sentence" must be read as waiving claims of both procedural and substantive

error in sentencing. Here, the text of the appellate waiver is clear and unambiguous; if the sentence imposed is less than 125 months, any appellate review right is waived. Thus, despite Spinks's argument to the contrary, because he was sentenced to less than 125 months imprisonment, there is no space reserved in the waiver for a procedural reasonableness challenge.

Nor are we willing to dictate specific language that the government must utilize in its plea agreements. To further his argument, Spinks points out that, in a Criminal Resource Manual, the Department of Justice has provided sample appellate review waiver language stating: "the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute(s) of conviction (or the manner in which that sentence was determined)." See U.S. Dep't of Just., Criminal Resource Manual § 626, ¶ 2, https://www.justice.gov/archives/jm/criminal-resource-manual-626-plea-agreements-and-sentencing-appeal-waivers-discussion-law (last updated Jan. 22, 2020). However, "[w]aivers of appeal vary considerably in their language and the scope of the waiver is simply a matter of what the parties agreed to in the particular case." McCoy, 508 F.3d at 77. The only condition contemplated by the waiver in this case was whether the sentence was more or less than 125 months. As such, there is no reason to read in any additional conditions nor will we "conjure up an ambiguity in a plea agreement where none legitimately exists." United States v. Arroyo-Blas, 783 F.3d

361, 365 (1st Cir. 2015) (cleaned up) (quoting United States v. Anderson, 921 F.2d 335, 338 (1st Cir. 1990)); see also United States v. Edelen, 539 F.3d 83, 86 (1st Cir. 2008) (noting that where the only condition of an appellate waiver is the duration of the sentence, defendant's knowledge of which "offense level or corresponding [guidelines sentencing range is] applicable to his case [is] not a condition of the waiver.").

Nonetheless, to buttress his contention, Spinks argues that the scope of the appellate waiver could not include the district court's guidelines sentencing range calculation because it had not been calculated at the time he signed the plea agreement. Thus, Spinks argues that he could not have waived a challenge to a calculation that had not yet been made. However, knowledge of which offense level or what resulting guidelines sentencing range would apply to his case was not a condition of the waiver. Indeed, Spinks was specifically told by the district court at the change-of-plea hearing that the guidelines sentencing range had not been determined yet and was warned that even if the court "impose[d] a sentence more severe than the one called for by the guideline, you will still not be permitted to withdraw your guilty plea." After hearing this warning, Spinks confirmed that he understood.

We have previously stated that if a defendant wanted to know how the Probation Office would treat his past convictions, he

could have requested that information before he signed the plea agreement.  See United States v. Donath, 616 F.3d 80, 85 (1st Cir. 2010).  Spinks, however, did not establish any such condition to his plea agreement, and we have long held that "[w]hen enforcing the appellate waiver, we stress that both sides are obligated to live by the bargain they made."  Id. at 84; see Edelen, 539 F.3d at 86-87 ("The fact that [a defendant] considers unjust the application of the . . . enhancement does not invalidate the waiver, nor would the fact that he did not know the enhancement was applicable.").  Thus, even though Spinks had no opportunity to review the applicable guidelines sentencing range before he signed the plea agreement, Spinks remains bound by the unambiguous language of the appellate waiver.

In any event, Spinks's appeal argument is constructed to reduce his sentence, which is a situation barred by the waiver. While Spinks may be unsatisfied with the guidelines sentencing range calculation, "[i]f the mere fact that a defendant has arguments he could potentially invoke on appeal were allowed to invalidate a waiver, then appellate waivers would become meaningless."  Edelen, 539 F.3d at 87.

Here, the district court imposed a sentence of 115 months, coming in under the limit set in the plea agreement and thus barring any appeal by Spinks.

## B. The Plea Agreement's Validity

In the alternative, Spinks argues that even if the waiver is construed to bar an appeal, the waiver was not entered into knowingly and thus enforcing it would constitute a miscarriage of justice. These contentions are governed by the Teeter framework, see United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), which finds appellate waivers presumptively valid "so long as (1) the agreement clearly delineates the waiver's scope; (2) the district court specifically inquired about the waiver at the plea hearing; and (3) denial of the right to appeal would not constitute a miscarriage of justice." United States v. Goodman, 971 F.3d 16, 21 (1st Cir. 2020) (quoting United States v. Betancourt-Pérez, 833 F.3d 18, 22 (1st Cir. 2016)).

Spinks argues that if the waiver's scope is clearly delineated to bar a procedural reasonableness challenge, then the second and third Teeter factors are not satisfied because the district court failed to explain the waiver's full effect. Specifically, Spinks maintains that the district court failed to inform him that the waiver encompassed challenges to the guidelines sentencing range calculation, which Spinks argues was required in order for him to have knowingly assented to the waiver. But we have established no requirement that the district court must "drill[] down to lay bare what kinds of claims would be barred by [an appellate] waiver." United States v. Staveley, 43 F.4th 9, 15

- 13 -

(1st Cir. 2022).  In fact, the "district court [is] entitled to rely on the defendant's representations that he was satisfied with his counsel's handiwork, that he had reviewed the terms of the plea agreement with his counsel, and that he understood all of those terms."  Id.

And, as the record reflects, the district court questioned Spinks thoroughly at the change-of-plea hearing to ensure that he understood his plea agreement.  The district court confirmed that Spinks had consulted his counsel about the significance of the agreement, that he understood it, that he had signed it voluntarily, and that he intended to agree to all its terms and conditions.  Spinks responded affirmatively to each of the district court's questions, denoting his full understanding of the agreement.  Yet, the district court went further and explained that Spinks was "waiving or giving up any right to challenge the legality of [his] guilty plea and [his] conviction in a higher court."  The court emphasized that Spinks's agreement meant that "for all intents and purposes, if I impose a sentence of 125 months or less, I will be the only judge to review the legality of that sentence."  Spinks again confirmed his understanding.

The district court then discussed the guidelines sentencing range and the court's obligation to calculate the sentence under the applicable guidelines sentencing range.  The court added:

> I can't determine the advisory guideline sentence until after I've read a presentence report that the probation office will prepare and until I've given your lawyer and the prosecutor an opportunity to challenge the facts in the report.
>
> After I determine what advisory guideline applies to your case, I still have the authority to impose a sentence that is more severe, or it could be less severe, than the sentence called for by the advisory guideline. Do you understand?

Spinks replied, "Yes, sir." Given the extensive questioning, it is unlikely that Spinks came away from the change-of-plea hearing believing that he had somehow reserved his right to challenge the guidelines sentencing range calculation. Indeed, Spinks's own comments at the end of his sentencing hearing reflect his understanding that he had given up that right. After the district court explained the appellate waiver once more, Spinks stated that he understood the appellate waiver but also lamented the fact that "now I've waived my rights, all my rights."

Having determined the threshold issue that the appellate waiver bars Spinks's appeal, we need not consider the merits of his procedural reasonableness challenge regarding whether his prior conviction should have been considered relevant conduct to this case.

### III. Conclusion

For the foregoing reasons, we dismiss Spinks's appeal.